# CHARLESTON.

## SWEENY *v.* SUGAR REFINING CO.

Submitted June 2d, 1887.—Decided November 19th, 1887.

1. CORPORATIONS—DIRECTORS—TRUST RELATION.
    The directors of a corporation occupy the relation of trustees to such corporation and its property. (p. 451.)

2. CORPORATIONS.
    Where the board of directors of an *insolvent* corporation ordered the conveyance of all the property, real and personal, of the corporation, to secure a large debt due from it to another corporation, at a meeting in which one or more of such directors who participated and voted for the resolution authorizing the conveyance were also directors of the corporation for whose benefit the conveyance was made, *held*, the conveyance made by virtue of such order is *prima facie* fradulent and void, not only as to the grantor and its stockholders, but also as to its creditors, and will be so declared unless it is shown on behalf of the corporation thus secured, by clear and convincing proof, that such conveyance was fair and reasonable, and absolutely free from fraud. (p. 453.)

3. FRAUDULENT CONVEYANCES—EFFECT OF SETTING ASIDE—LIEN OF CREDITORS.
    General creditors who, by bill, answers, or petition, assail a deed of their debtor conveying land as fraudulent, and succeed, have a lien on the land for their respective debts from the filing of such bill, answer or petition. (p. 455.)

*W. P. Hubbard* and *H. M. Russel* for appellants.

*D. Lamb* and *Caldwell & Caldwell* for Bank of Ohio Valley, appellee.

SNYDER, JUDGE:

The Wheeling Grape Sugar & Refining Company was, in July, 1881, created and organized as a corporation, under the provisions of chapter 54 of the Code of the State, for the purpose of manufacturing glucose or grape sugar. At the first meeting the stockholders elected C. E. Dwight, W. Leighton, F. P. Jepson, A. M. Adams, and Victor Rosenberg directors of the company. The directors elected C. E. Dwight presi-

dent, and F. P. Jepson secretary and treasurer. Afterwards the board of directors elected A. O. Egerter secretary. In January, 1882, the same persons were re-elected directors, and the board elected the following officers : O. E. Dwight, president; F. P. Jepson, treasurer; and A. O. Egerter, secretary; and these same persons acted and continued to be the directors and officers of the company until January, 1883. At the time the directors were first elected, the said Adams and Rosenberg were stockholders and directors of the Ohio Valley Bank, and said Jepson was the cashier of said bank; and they each continued to be such officers of the bank during the whole time they were directors of the Grape Sugar Company. The principal offices and places of business of both said company and bank were in the city of Wheeling in this State. The business of said company seems to have been experimental, and proved to be unsuccessful, if not a complete failure. Prior to September 2, 1882, the company had become largely indebted to said Ohio Valley Bank and others, and at that time its embarrassments and financial condition were such that it was known to the directors that, unless additional capital stock could be sold, or a large amount of money raised upon bonds to be issued, the business of the company could not be continued, and that it would have to cease its operations for the want of funds and credit, and that it would be sued and closed up by the creditors. The company was, in fact, then wholly insolvent, and unable to meet its obligations or pay its existing indebtedness. In these circumstances the board of directors held a meeting, August 31, 1882, at which there were present Dwight, Leighton, Rosenberg, and Jepson, as directors, and passed a resolution authorizing Dwight, the president of the company, " to execute a deed of trust on all the real estate, buildings, and machinery owned by the company to secure the payment of $20,000.00 borrowed of the Bank of the Ohio Valley; and also to execute such deed of assignment of all personal property of said company, including corn, blackstrap, all manufactured syrup on hand, all barrels, and all book-accounts due the company, as will properly secure the Bank of the Ohio Valley upon overdraft due from the company to said bank." The said Rosenberg and Jepson were

present, acting as directors, when said resolution was passed, and they as well as the two other directors then present, voted for it. Afterwards, on September 2, 1882, C. E. Dwight, as president, on behalf of said company, executed two trust deeds, known in the record as "Exhibits 22 and 23." The first, Exhibit 22, conveys to W. A. Isett, trustee, a number of lots of land, which are fully described, situate in the city of Wheeling, and designated as the property of the company; "and also all the buildings, real estate, and machinery belonging to the grantor in Ohio county, West Virginia," in trust to secure to the Bank of the Ohio Valley, a corporation existing under the laws of the State of West Virginia, the payment of four promissory notes of $5,000.00 each, and any renewals thereof, with the interest thereon. The notes are copied into the deed. The first is dated May 3, 1882, the second May 11, 1882, the third July 26, 1882, and the fourth August 29, 1882, aggregating $20,-000.00, all payable to the order of the company at the said bank, four months after their respective dates. The second deed, Exhibit 23, conveys to the same trustee "all the corn, blackstrap, manufactured syrup, barrels, book-accounts, evidences of debt, and all the personal property of every kind whatsoever, wheresoever situated, now belonging to the said company; and also all the corn, blackstrap, manufactured syrup, barrels, book-accounts, evidences of debt, and all the personal property of every kind and description, wherever situated, of which the said company may hereafter become possessed, or to which it may hereafter become entitled; in trust to secure to the Bank of the Ohio Valley the payment of $14,909.14 money now [then] due said bank, and the interest thereon, till paid, and also to secure to said bank the payment of any sums of money that it may in future permit to become due to it from said company in the way of drafts or overdrafts, or in any other manner." After empowering the trustee to sell the property thus conveyed upon being directed so to do by the bank, the deed provides that the trustees shall collect the evidences of debt and book-accounts "upon being directed to do so by said bank," and apply the proceeds of such sales and collections to the payment of expenses and the debt secured. Both of

these deeds were acknowledged on September 4, 1882, before a notary of Ohio county, and the first was recorded in said county on December 6, 1882, and the second on December 11, 1882. The board of directors held another meeting, September 11, 1882, at which four directors were present, to-wit, Dwight, Adams, Rosenberg, and Jepson, and passed the following resolution: "Resolved, that the president of the Wheeling Grape Sugar & Refining Company be, and he is hereby, ordered to execute an additional deed of trust on the real estate, buildings, machinery, and fixtures of the company, to secure the Bank of the Ohio Valley for overdraft due said bank from said company this day, and also to secure any future overdrafts." All said directors acted in said meeting, and voted for said resolution. By deed dated on said eleventh day of September, 1882, known in the record as "Exhibit 24," said company, by C. E. Dwight, its president, conveyed to W. A. Isett, the same person named as trustee in the two deeds before mentioned, all the real estate, buildings, and machinery of the company described in the aforesaid deed, Exhibit 22; "in trust to secure to the Bank of the Ohio Valley $14,602.08, money now [then] due said bank and its interest; and also any money that the bank may in future permit to become due to it from said company, in the way of drafts, overdrafts, or in any other manner." This deed, and also the other two deeds, provide that the trustee may act by agent or attorney in the execution of his trust. This deed was acknowledged in Ohio county on September 12, 1882, and was recorded in said county on December 6, 1882.

Thompson & Hibberd, as partners, on September 2, 1882, the day the first two deeds aforesaid were executed, caused to be filed in the clerk's office of said county a mechanic's lien upon the property of said Grape Sugar Company for labor done and materials furnished to it upon contract prior to that date, amounting to $4,999.84; and subsequently other mechanics and laborers filed similar liens for materials and labor furnished said company, and other creditors brought suits and recovered judgments against said company,—some of whom recovered judgments before and others after said deeds had been recorded. Several of these creditors sued

out attachments and had them levied on the property of the company conveyed by the deeds, after the deeds had been recorded, and a number of them, after they recovered judgments, had executions issued thereon and levied upon the personal property of the company conveyed in said deed, Exhibit 23. On January 18, 1883, A. J. Sweeney & Son, the Exchange Bank of Wheeling, and other creditors who had thus recovered judgments, issued attachments and sued out executions against the said Grape Sugar Company, filed their bill in the Circuit Court of Ohio county, against the said company, the Bank of the Ohio Valley, W. A. Isett, trustee, and others, to have the aforesaid deeds (Exhibits 22, 23, and 24) set aside and annulled, upon the grounds that each of them had been executed without legal authority, that they were fraudulent *per se* as well as fraudulent in fact, and therefore inoperative and void as to their debts against the company. On the day said bill was filed the court, on the motion of the plaintiffs, awarded an injunction inhibiting the defendants, the said company, the Bank of the Ohio Valley, and W. A. Isett, trustee, from selling or in any manner disposing of the property, real or personal, mentioned in said deeds, or from collecting any of the debts due said company; and upon like motion the court afterwards appointed a receiver to take charge of all the property and assets of the said company. In February, 1883, Thompson & Hibberd filed their bill in said court against the said Grape Sugar Company and others to enforce their aforesaid mechanic's lien against the real estate of said company, and by their answer filed to the bill of Sweeney & Son and others the said Thompson & Hibberd unite in the allegations and prayer of said bill as to the invalidity and fraudulent character of the trust deeds to W. A. Isett, and ask that said deeds may be set aside.

By consent of all the parties these two causes were consolidated, and by like consent the court, on February 22, 1883, entered a decree directing commissioners appointed by it to sell all the real estate of the defendant, the Grape Sugar Company, and also all the fixtures and personal property of said company, except the portion thereof which had been ordered to be sold by the receiver. But this decree is

without prejudice to any of the parties, and they are to have the same priorities and rights to prosecute their demands and defend their interests as if this decree had not been entered.  The whole amount realized from the sale of all the real estate of the Grape Sugar Company was $22,050.00, and the amount realized from the sales of all the personal property and the collections of debts due to said company was $4,325.95, making the whole assets of the company $26,375.-95.  The Bank of the Ohio Valley filed its answer, denying the invalidity of any of said three trust deeds, and claiming that they were *bona fide* and a valid security for the indebtedness of the company to it, which indebtedness was reduced to judgment on April 9, 1883, and then amounted to $31,474,43.

The cause was referred to a commissioner, who filed his report showing the amounts and priorities of the respective claims against the real and personal property and assets of the Grape Sugar Company.  He reported that the plaintiffs, Thompson & Hibberd, were entitled to the security of their mechanic's lien to the extent of $3,779.10, being only part of their claim.  The commissioner found that the trust deed, Exhibit 23, "shows on its face that it was the intention of the company, when it was executed, to retain the possession and control of the property therein conveyed, to use and consume portions of it, to sell portions, to collect the book-accounts and evidences of debt, and to contract and pay debts.  And that such was the intention of the company is further evidenced by the fact that it did, after the execution of the deed, and up to the time the receiver appointed herein took charge thereof, retain the possession and control of the property, using and consuming portions, and selling other portions, collecting the book-accounts and evidences of debt, and contracting and paying debts."  The commissioner finds these facts in support of the conclusion that the provision in the deed, which conveys, not only all the property the company owned at the time, but also all the "evidences of debt, and all the personal property of every kind and description, wherever situated, of which the company *may hereafter* become possessed, or to which it *may hereafter* become entitled," renders the deed fraud-

ulent on its face,—citing *Livesay* v. *Beard*, 22 W. Va. 592; *Klee* v. *Reitzenberger*, 23 W. Va. 749; and *Shattuck* v. *Knight*, 25 W. Va. 590. "Your commissioner, therefore, by reason of the matters hereinbefore set forth, reports that the deed of trust, Exhibit 23, aforesaid, is fraudulent on its face, and void as against the complainants and the other creditors of said company, and that the trust deeds, Exhibits 22 and 24, being parts of the same transaction, are also fraudulent and void as against the complainants and other creditors of said company." The further conclusion of the commissioner, as reported, was that the two latter deeds were not fraudulent by reason of the fact that they were withheld from record for over three months after their execution, nor for the reason that the officers of the Bank of the Ohio Valley participated in the meetings of the board of directors of the Grape Sugar Company, and voted for the resolutions authorizing the making of said deeds. The plaintiffs and the defendant, the Bank of the Ohio Valley, filed exceptions to the commissioner's report,—the plaintiffs A. J. Sweeney & Son, *inter alia*, because the commissioner found that the statute forbidding a member of the board of directors from voting upon, or being present at the time the board acts upon, any question in which he is interested, was enacted solely for the protection of the stockholders of the corporation, and that consequently they alone can impeach the validity of acts done in violation thereof; and also because the commissioner found that the resolutions authorizing the trust deeds were free from actual fraud. The plaintiffs, Thompson & Hibberd, in addition to the grounds just stated, excepted because the commissioner refused to report the whole of their claim as covered by their mechanic's lien. The defendant, the Bank of the Ohio Valley, excepted because (1) the commissioner allowed certain specified items of the claims of Thompson & Hibberd as embraced in their mechanic's lien, which he should have excluded; (2) that he improperly reported the trust deed, Exhibit 23, fraudulent on its face; and (3) that he erroneously found the deeds, Exhibit 22 and 24, parts of the same transaction, and therefore invalid as to the plaintiffs and other creditors. The court by its decrees sustained a portion of the exceptions of the Bank of the Ohio

Valley to the claim of the plaintiffs, Thompson & Hibberd, and reduced the amount which they were entitled to have included in their mechanic's lien to $3,535.89; it also sustained the exception of the bank to the finding of the commissioner that the deeds, Exhibits 22 and 24, were invalid, and held that each of said deeds were valid, and that the bank was entitled to the benefit of the lien on the real estate of the company thereby created. It overruled the exceptions of the plaintiffs, Sweeney & Son, and in all respects, except as aforesaid, it sustained and confirmed the report of the commissioner. The report having been modified according to said decree, the court, on January 26, 1886, entered a final decree ordering the distribution of the whole fund in accordance with the principles thus settled. The plaintiffs in both these suits appealed from said decree to this Court.

The important question to be determined, and the one to which nearly the whole of the discussion in the elaborate briefs filed in this Court are confined, is whether or not the three trust deeds executed to secure the Bank of the Ohio Valley, or any of them, are sufficient and valid conveyances. It is shown by the record, as hereinbefore stated, that the same person, W. A. Isett, is the trustee in each of said deeds, and that he was at the time, and continued to be, the president of said bank; that at the meeting of the board of directors of the Grape Sugar Company which passed the resolution authorizing the first two of said deeds, there were present but four directors, one of whom was Jepson, the cashier of said bank, and another Rosenberg, a director of said bank, and that both of these acted and voted for said resolution, and that, at the meeting at which the resolution was adopted authorizing the third deed, of the four directors present, two were directors, and the third the cashier, of said bank, and both of said directors and said cashier acted and voted for said resolution. The Grape Sugar Company was insolvent at this time, and that fact was, or ought to have been, apparent to the directors. It was wholly unable to meet or pay its debts. It is a well-settled principle of equity jurisprudence that a party holding a fiduciary relation to trust property cannot, either directly or indirectly, become

the purchaser of such property, or transfer it to his own use or for his benefit; and if he does, the sale or transfer is voidable, and will be set aside at the mere pleasure of the beneficiaries, although such fiduciary may have paid a full price and gained no advantage. *Newcomb* v. *Brooks*, 16 W. Va. 32, 59, and cases cited. In *Reilly* v. *Oglebay*, 25 W. Va. 36, 43, this Court, following *Newcomb* v. *Brooks*, *supra*, says : "This rule is not confined to trustees and fiduciaries in the technical sense of those terms, but it extends to every person coming within the reason of the rule. It embraces trustees, guardians, executors, administrators, agents, *cashiers of banks*, factors, auctioneers, sheriffs, commissioners in bankruptcy, and their solicitors, assignees of bankrupts, attorneys at law, *directors of corporations*, and parties bearing many other relations to each other which may not be classified." *Newcomb* v. *Brooks*, 16 W. Va. 63 ; *Abbott* v. *American, etc., Co.*, 33 Barb. 578. This rule does not seem to be questioned by the counsel for the Bank of the Ohio Valley in this cause ; neither do they seem to deny that the rule applies to the deeds under consideration. But they insist that, conceding the acts of the directors of the Grape Sugar Company in effecting the conveyance of the property of that company for the benefit of the bank, of which a part of said directors were also officers and part owners, was a breach of duty by the directors of said company, and thereby rendered the conveyances voidable, still such breach of duty makes the conveyances voidable only at the election of the corporation itself or its stockholders, and that it cannot for that cause be avoided at the election of the creditors of the corporation. In support of this position they rely upon the following among other cases : *Gordon* v. *Preston*, 1 Watts. 385 ; *Beecher* v. *Rolling Mill Co.*, 45 Mich. 103, 7 N. W. Rep. 695 ; *Stewart* v. *Railroad Co.*, 38 N. J. Law 505 ; *Wallace* v. *Railroad Co.*, 12 Hun. 460 ; *Rolling Stock Co.* v. *Railroad Co.*, 34 Ohio St. 450 ; 2 Mor. Corp., §§ 630, 631, Pierce, R. R. 39 ; 3 Pom. Eq. Jur., § 1,094 ; *Detroit* v. *Dean*, 106 U. S. 537, 1 Sup. Ct. Rep. 560 ; *Dimpfell* v. *Railway Co.*, 110 U. S. 209, 3 Sup. Ct. Rep. 573. These cases are all founded upon facts wholly different from those in the case at bar. Some of them are cases in which subse-

quent purchasers of the equity of redemption of the corporate property sought to avoid the mortgage which existed on the property at the time they purchased. This of course they had no right to do. They took the property *cum onere* and with full notice. Others are cases in which there had been unreasonable delay in the election to avoid the transaction. In some of them the rights of innocent third persons had intervened. In others the corporations were solvent, and, of course, in such case the act could injure only the corporation and its stockholders and they alone could have any title to avoid the act. The most of them, however, are cases in which the stockholders and others attempted to sue without showing that the corporation had refused to sue according to the general rule in such cases. 3 Pom. Eq. Jur., § 1,095. In none of them have I been able to find any principle which would deny to the creditors of an insolvent corporation the right to avoid the transfer of the corporate property made by its directors in violation of their trust and duties, or for the benefit of themselves, either directly or indirectly, in a case in which the rights of no innocent third persons had intervened and there had been no unreasonable delay on the part of the creditors in seeking to avoid the transfer. In *Thomas* v. *Railroad Co.*, 109 U. S. 522, 524, 3 Sup. Ct. Rep. 315, the court says: "Such contracts are not void, but voidable at the election of the *parties affected* by the fraud. It may often occur that notwithstanding the vice of the transaction, namely, the directors or trustees, or a majority of them, being interested in opposition to the interest of those whom they represent, and in reality parties to both sides of the contract, that it may be one which those whose confidence is abused may prefer to ratify or submit to. It is therefore at the option of these latter to avoid it, and until some act of theirs indicates such purpose it is not a nullity." This evidently refers to solvent corporations; at the most, it cannot refer to a corporation which is both insolvent and so embarrassed that it has neither funds nor credit to continue its corporate business. Even if this is not so, the language of the court is that the contracts are "voidable at the election of the *parties affected by the fraud.*" In the case of a corporation which is wholly insolv-

ent and unable to continue its business, neither the corporation itself nor its stockholders have any beneficial interest in its property, and therefore they cannot be affected by the fraud. In such case the creditors alone can be affected, and they alone have any interest in avoiding the contracts. *Lamb* v. *Pannell*, 28 W. Va. 663, 666; 2 Mor. Corp. §§ 787, 788.

Our statute declares that " no member of the board [of directors] shall vote on a question in which he is interested otherwise than as a stockholder, (except the election of a president,) or be present at the board while the same is being considered." Code., § 52, ch. 53. In *Hope* v. *Salt Co.*, Woods, J., after quoting this statute in the opinion of the Court, says: This would seem to leave every such act of the directors open to explanation; but we are of opinion that even then, unless it was made to appear by clear and convincing testimony that such act was free from all taint of fraud or unfairness on the part of the director, it ought to be set aside *at the option* of the beneficiary, or of the party standing in such position. Such advantage so obtained by such director ought to be held *prima facie* fraudulent, yet capable of being purged of the fraudulent taint by clear and convincing proof of its fairness, reasonableness, and absolute freedom from fraud and unfairness." 25 W. Va. 807. On the same page, it is said: "But it may be safely assumed that in any case where one director participated with others in any act in regard to the trust property for the benefit of the fiduciary, at the expense of the *cestui que trust, such act was for that cause fraudulent as to him.*" This was a suit brought *by creditors*, to set aside a conveyance made by the directors of the corporation to one of its directors. It did not in that case appear that the grantor in the deed acted at the meeting which authorized the conveyance, but the same was nevertheless set aside at the suit of creditors of the corporation. The doctrine announced in that case is certainly correct, and fully sustained by the authorities, when the corporation is wholly insolvent and the conveyance is of the entire property and effects of the corporation. In such case, if the conveyance is in whole or in part for the benefit of one or more of the directors who acted in the board

and voted for the resolution authorizing the conveyance, the same will, in a court of equity, be regarded as at least *prima facie* fraudulent, not only as to the corporation and its stockholders, but its creditors. *James* v. *Railroad Co.*, 6 Wall. 752; *Drury* v. *Cross*, 7 Wall. 299; *Coal Co.* v. *Sherman*, 30 Barb. 553; *Butts* v. *Wood*, 37 N. Y. 317. This conclusion in no manner affects the principle decided in the cases of *Burr's Ex'r* v. *McDonald*, 3 Grat. 215, and *Pyles* v. *Furniture Co.*, *supra*, 129, 2 S. E. Rep. 909. The convey-ance in the first of these cases was made by the *stockholders* in general meeting. The latter case, was simply a suit to set aside a conveyance of all its property by an insolvent corporation on the ground that such insolvent corporation could not legally make preference among its creditors. There was no attempt in either case to show that any of the stockholders or directors who authorized the conveyances were in any way interested, as *cestuis que trust* or otherwise, in the conveyances.

In the case at bar, two of the directors at the one meeting, and three at the other, which ordered the execution of the trust deeds in question, who were present and voted for the order directing the conveyances, were either directors or cashier of the bank for whose use the conveyances were made, and therefore interested in the capacities both as fiduciary and *cestuis que trust*. They acted in antagonistic positions, with the preponderance of their interests greatly in favor of the bank and against that of the company for which they assumed to act; consequently, according to the principles above announced, the conveyances were *prima facie* fraudulent and void as to the plaintiffs and other creditors in these causes. The burden was upon the bank to remove this presumption of fraud by " convincing proof of the fairness of the transactions, and their absolute free-dom from fraud and unfairness." The evidence and circum-stances in the record wholly fail to furnish such proof; but, on the contrary, the proofs and circumstances tend to show that the acts of the directors and cashier of the bank in causing said conveyances to be made were such as to give to the bank an unfair preference among the creditors of the Grape Sugar Company. There is nothing in the record to

prove that the debt due to the bank was of any higher dignity or imposed any greater obligation upon the company for its payment than the debts due to the plaintiffs here and other creditors; nor does it appear that if the directors and cashier of the bank had not participated in passing the resolutions giving such preference to the bank that such advantage would have been given to debts due to it. My conclusion therefore is that all and each of said three trust deeds (Exhibits 22, 23, and 24) are invalid as to the debts of the plaintiffs and other creditors for the reasons hereinbefore stated. This conclusion makes it unnecessary to pass upon the questions whether, for the reasons stated in the report of the commissioner, these deeds or any of them are fraudulent on their face or in fact. I think, however, that the finding of the commissioner as to the deed, Exhibit 23, is correct, and sustained by the authorities cited by him.

It is suggested by counsel for the Bank of the Ohio Valley that the effect of holding said trust deeds inoperative should be followed by a direction that the assets of the Grape Sugar Company must be ratably distributed among all the creditors of the company, upon the ground that the assets of an insolvent corporation are a trust fund, and that therefore no preference can be given by the corporation itself among its creditors, or be secured by obtaining liens by judgments or otherwise. This position was directly repudiated by this Court in *Pyles* v. *Furniture Co.*, *supra*, 123, 2 S. E. Rep. 909, and therefore needs no further notice.

It is insisted by the counsel for said bank that the actions of both the court and the commissioner in respect to the mechanic's lien of the plaintiffs Thompson & Hibberd were too liberal to that firm, and allowed them an amount by virtue of said lien in excess of what was actually covered by it. The conclusion already announced, by which the trust deeds to secure the bank are set aside, renders it immaterial to the interests of the bank whether said lien is effective or not, because the said Thompson & Hibberd, by filing their bill, and by assailing said deeds in their answer to the bill of A. J. Sweeney & Sons, acquired a lien on the property of the Grape Sugar Company for their whole debt, regardless of their mechanic's lien, before the bank obtained any judg-

ment or other lien for its debt, and they are therefore entitled to a preference in the payment of their debt over 'that of the bank. Section 2, ch. 133, Code; *Wallace* v. *Treakle*, 27 Grat. 487; *Hughes* v. *Hamilton*, 19 W. Va. 393.

Having considered and decided all the material questions presented by the record, I am of opinion, for the reasons herein stated, that the decrees of December 7, 1885, and February 27, 1886, of the Circuit Court be reversed, and this cause remanded to that court for further proceedings in accordance with the principles announced in this opinion.

REVERSED. REMANDED.