CHARLESTON.

Cohn Bros. & Co. v. Ward, *et al.*

Submitted January 28, 1892.—Decided April 16, 1892.

1. Deed of Trust—Fraud.

Where a deed of trust secures several creditors, and one or more of the debts secured is fictitious and fraudulent, that fact does not invalidate the deed as to *bona fide* creditors secured by it not guilty of any fraud.

2. Deed of Trust—Fraud—Priority of Debts.

Creditors not secured or not preferred in a deed of trust, who sue to overthrow it or some of the debts therein secured on the ground of their being fraudulent or void, and succeed in overthrowing some of the debts therein secured, are not advanced in priority so as to take rank of the debts overthrown, and get payment out of the property conveyed in preference to *bona fide* creditors secured or preferred by the deed, but the whole property remains to answer their demands according to the deed.

*J. M. Laidley, A. B. Wells* and *O. Johnson* for appellants. *A. B. Wells* and *O. Johnson* cited 30 W. Va., 443; 22 W. Va. 434; 31 W. Va. 166; Id 159; 27 Gratt. 479.

*J. G. Shilling* for appellees cited 21 W. Va. 291; 31 W. Va. 156; 22 W. Va. 434; 30 W. Va. 443; 1 Am. & Eng. Ency. 853; 23 Fed. Rep. 13; 8 Am. & Eng. Ency. 642 note; Bump. Fraud. Conv. (2nd Ed ) 42, 53; Code (1891) c. 72, § 5; 3 Ala. 694; 22 W. Va. 412; 13 W. Va. 230; 29 W. Va. 703; 8 Gratt. 149.

BRANNON, JUDGE:

James T. Ward and wife executed a deed of trust conveying to Uriah Dobbins, trustee, real and personal property, in trust—*First*, to pay costs of its execution; *second*, a debt to J. C. Dillard; *third*, a debt to James S. Gandee; *fourth*, a debt to Jasper Peterson and to six other creditors debts in successive order, and the residue ratably on other debts.

Cohn Bros. & Co. brought a suit in Roane county to set this deed of trust aside as fraudulent and void as to them as creditors of Ward, and a decree was pronounced holding the deed of trust valid, but holding the debt secured to Dillard and part of that of Gandee void as to the plaintiffs; and the decree then proceeded to substitute the plaintiffs and other creditors of Ward not secured among the eight preferred creditors, but falling among the *pro rata* creditors secured in said deed, to the places held by Dillard and Gandee to the extent of the amounts of their rejected or invalid debts; in other words, advanced these creditors to that extent from the position of deferred *pro rata* creditors to that of Dillard and Gandee, who were first and second creditors.

Ward and three of said preferred creditors, Gandee, Peterson, and Cunningham, appeal.

A question of practical importance in this State, considering the wide use of deeds of trust giving preference among creditors, arises in this case, and one which, so far as I know, or the briefs inform us, has not been pointedly decided in either of the Virginias. This question is: Suppose a deed of trust securing various creditors gives pref-

erence to them in order first, second, third, and so on, and a creditor not preferred attacks the deed of trust as fraudulent and void, but fails to overthrow the deed *in toto*, but yet does succeed in overthrowing as fraudulent some one or more of the debts preferred, does the attacking creditor take the place and rank of the creditor whose debt is overthrown to the extent of that debt? Or do the preferred creditors lower in the order of preference than the creditor whose debt is overthrown get the benefit of his overthrow? Is the whole property to go to pay the remaining preferred creditors first, just as if the defeated debt had not been inserted; or is the amount which otherwise would have gone to him to be diverted from the other preferred creditors, and go to the unpreferred creditor attacking the deed?

In *Bank* v. *Hoffheimer*, 23 Fed. Rep. 13, in the federal circuit court of Virginia, a deed had been made to a trustee, conveying estate to pay numerous creditors scheduled as "Class A," and, after their payment, to pay creditors scheduled as "Class B," and a general creditor brought suit to avoid three of the debts in class A, and they were adjudged fictitious and void, and it was further held (1) that "the deed conveyed integral amounts to a series of integer creditors, and its provisions were several by the terms of the grant; (2) that, as it did not provide for the contingency of some of the debts in Schedule A. being fictitious, which they in fact proved to be, the amounts which were intended for them were not disposed of by the deed, remained in the grantor as to the attacking creditors, and were subject to their claims." The court also said that deeds of assignment giving preference must be strictly construed, and equity will not interpolate clauses to carry out a possible intent to prefer creditors otherwise than as expressed, and that the success of attacking creditors can not enlarge the deed as to those claiming under it. The opinion in the case bases itself chiefly on *Prince* v. *Shepard*, 9 Pick. 176; but a scrutiny of that case will show that it was misconceived in the case referred to, because there Henry Prince conveyed to John Prince and Hodges half of a ship, to have and to hold to them, respectively, in the

proportions which the sums of money due to them, respectively, bear to each other and other creditors attached; and, the ship having been sold, and the proceeds held by consent to await judicial decision as to the matter, John Prince sued in *assumpsit* the parties holding the proceeds of sale, and it was found that the debt of Hodges was void, that of John Prince valid, and the decision was that the interests of John Prince and Hodges were several, so that John Prince could sue alone in *assumpsit*, though, if the interests had been valid in the whole, they would take as tenants in common; that the officer could sell under attachment only the part fraudulently assigned, that being still, as regarded the attaching creditors, in Henry Prince. Now, notice that each of the mortgagees in that case had a separate debt, and the half of the ship was conveyed to them to be held, not the whole half for the payment of both debts, but to be held by each mortgagee separately in interests or portions corresponding to those debts. Each had a separate share, and, one share being avoided, it remained in the mortgagor liable to attachment, and the *bona fide* debt of John Prince had no claim on the interest conveyed to Hodge. It was a conveyance of an integer—an interest integral. But in the present case it is different. Ward conveyed the whole property to pay all the debts. No one creditor had a claim on any particular portion of that property. Each and every creditor preferred—all of them—had a right to look to the whole property for full payment. When one creditor is paid, or his debt avoided, he is eliminated; but he carries no part of the property with him, for it remains a whole yet, to answer the remaining debts, for the conveyance pledged it as a whole for all the debts. Where there is, for instance, one tract of land, or a separate interest therein, conveyed to secure one man, and another tract, or a separate interest, conveyed to secure another, and the debt of one of these men is fraudulent, the tract or interest conveyed to secure him is still in the debtor, liable to his creditors, and the other of these creditors has no lien on it, because it was not conveyed to him. Such, in effect, was the Massachusetts case of *Prince v. Shepard*. But the case would be different if the whole

tract, or a given interest, were conveyed to secure both debts indifferently. The fault of the decision in the case of *Bank* v. *Hoffheimer, supra*, lies in the idea that the interests of classes of creditors A. and B. were integers, or separate shares or entities. The whole property was conveyed to a trustee to pay, first, one class; second, another class, in full. All creditors of both classes had right to all the property until they were fully paid. It was a fallacy in that case to proceed on the idea that, when certain debts were avoided, then a proportionate interest in the property was in the grantor, the debtor, liable to creditors; for it had passed from him to the trustee, not simply for the benefit of the fraudulent debts, but for all debts, and it could not go back to the grantor upon any theory of reversion when the debts were avoided. Other authorities cited, in *Bank* v. *Hoffheimer* have no appreciable bearing on the point involved, as, for instance, *Shipe* v. *Repass*, 28 Gratt. 729, and *Boynton* v. *McNeal*, 31 Gratt. 462, holding that where a debtor makes a fraudulent transfer he may still, on its avoidance, claim a homestead. I think the case of *Hardcastle* v. *Fisher*, 24 Mo. 70, correct holding that where several debts are secured in a deed of trust, one or more being fictitious, "attaching creditors can not be allowed to stand in the place of the excluded claimant, and take his share of the fund. There is no legal principle upon which we can allow this. The impeached claim is extinguished by the fraud, so far as any participaton in the assigned effects is concerned, and the effect of this, in reference to the other creditors, is that the share that would otherwise have been appropriated to its payment sinks into the residue for the benefit of those who are entitled to the residue by the terms of the deed."

Diligence of the plaintiffs in overthrowing the debts is relied upon to give them the place of such debts. It is not a question of diligence, but of the imperious priority of the *bona fide* debts under a valid deed of trust. Where a deed of trust is wholly set aside, and no debts secured by it have any standing or priority under it, they do not stand in the way, and the court gives a lien on the property to creditors assailing it from the date of the institution of

their suit or filing their answer or petition seeking to set aside such deed, always, however, recognizing prior valid liens according to their date, as frequently held by this court. *Clark* v. *Figgins*, 31 W. Va. 156 (5, S. E. Rep. 643) ; *Sweeny* v. *Sugar Refining Co.*, 30 W. Va. 443 (4 S. E. Rep. 431.) These cases do not antagonize our conclusion ; on the contrary, they call for priority to the valid preferred debts in this case, for they are liens prior to the creditors attack-ing, by reason of a deed of trust held valid, and those liens are just as good against the attacking creditors as if they were judgments of date prior to this suit. It is hardly necessary to cite authorities to show that, though a deed of trust may include fraudulent debts, yet *bona fide* debts thereby secured, their owners not participating in any fraud, have the benefit of the deed, and it is not void be-cause of such fraudulent debts. *Cohn* v. *Ward*, 32 W. Va. 34 (9 S. E. Rep. 41.) For reasons more fully stated below in discussing assignments of error by appellees, without re-gard to the evidence of Gandee bearing on his debt, there is error in reducing his debt from the amount fixed in the trust, as his debt is not alleged to be fictitious or voluntary ; nor is it alleged that he had notice of Ward's fraudulent intent, if that be sufficiently charged itself.

Counsel for appellees cross assigns errors against them. The first of these is that it was error, upon the evidence to allow Gandee anything whatever on his debt secured by the deed. What I say a few lines above responds to this assignment.

The second error assigned by appellee is that of the debt of Jasper Peterson and Clayburn Cunningham where held valid without proof of valuable consideration. We shall here have to see what the bill charged. As to this deed of trust, it alleged that the grantors therein, intending to hinder, delay, and defraud Ward's creditors, did by it con-vey certain property to Dobbins, to be disposed of by him as in it specified, and providing that proceeds of sales under it should be paid to certain persons in certain orders, specifying eight preferred creditors, as above stated, in or-der one after the other, and the residue to certain other named creditors and any other creditors that might exist

*pro rata;* and alleging that said deed of trust was "void and fraudulent because the sale of the real estate therein mentioned is postponed for six months; and (2) because said deed provides for the voluntary distribution of the proceeds of sales of property therein mentioned to the amount of ———— dollars to the said Dillard, Gandee, Peterson, Cunningham, F. J. Daniels & Co., Jacobs & Wells, and out of the residue, if any, provides for the payment of the debts *pro rata* of said Ward, and for other reasons appearing on the face of the deed." It is then alleged in effect that the trustee Dobbins was insolvent, a friend and under the influence of Ward, and that the deed appointed him trustee because he could and would convert and use the property to the use and benefit of Ward, and Ward in appointing him would be running no pecuniary risk; that he and Ward were bosom friends, he having been Ward's clerk, and had received assistance from Ward. Now, the charge that in the execution of the deed of trust Ward intended to hinder, delay, and defraud creditors is very general, and there is no specification of wherein or how he intended to hinder them, unless in the appointment of a trustee pliant to his interest, or the postponement of sale for six months. There is no charge that these preferred creditors knew of or participated in any fraudulent intent in fact on Ward's part (if any is charged) or that their debts were fraudulent, fictitious, or unjust. As to these features of the bill, this Court on a former appeal in the case, held that there was no proof that the deed was fraudulent in fact. That is settled, and it is wholly useless here to give reasons for that holding. 32 W. Va. 39 (9 S. E. Rep. 41.) It also held that the postponement of sale for six months did not make the deed fraudulent in law. And so, at this point, we may say that the deed of trust as a whole is not to be regarded as fraudulent or void on its face or fraudulent in fact; and, further, that said debts were not fraudulent in fact, because, likely, of said adjudication, and certainly because there was no allegation that they were so. Why call on Peterson and other creditors to repel fraudulent intent when none was charged against them? Peterson and Cunningham did file their answers denying all

fraud, filing their notes on Ward, and alleging they were based on valuable consideration. But the assignment says they should have proven their claims were not voluntary, but based on valuable consideration. Certainly they could not be called on for such proof unless there was a distinct charge that the debts were in fact voluntary obligations. Now, it would be straining the bill and putting on it a forced meaning—one of which it is not fairly capable—to say that it charges that these debts are voluntary, not founded on valuable consideration. There should be distinct allegation in so material a point. The creditors could not be called on, therefore, to prove such consideration, and no error is found under such second assignment.

The fourth assignment of error by appellees is that the former decision of this court in this case is *res judicata* against all the perferred debts, and renders the decree allowing them erroneous. Nothing can be found to sustain this theory unless in the opinion then delivered, as the decree was one of simple reversal of the decree of the Circuit Court, which had held the deed void. The opinion does say, speaking of the bill: "If by the phrase 'voluntary distribution of the proceeds of the sale' it is intended to assert that the amounts secured to the creditors named in the deed are voluntary and without valuable consideration, then the burden of proving these alleged debts thus assailed by the plaintiffs were valid and based on valuable consideration, was upon said secured creditors; and, as they failed to offer any proof of that fact, it was proper to hold said debts invalid as against the plaintiffs and other creditors of Ward." This passage renders the proposition that the creditors must prove that their debts were on a valuable consideration, dependent on the question whether the language of the bill was to be construed as charging that they were voluntary obligations, but does not decide whether the language was to be construed so or not. We hold that it does not so charge either that they were unfounded and fictitious, or not founded on valuable consideration ; and, as a consequence, we hold that the debts are not barred by our former decision on the principle of *res judicata*.

As to the third assignment of error by appellees. We do

not see how any of the fund belonging to the creditors can be taken for costs. If the plaintiffs had wholly lost their suit, they should pay them, but, as they succeed against certain parties, the losing party should pay costs. The decree is reversed, and the cause remanded for further proceedings as herein indicated.

REVERSED.    REMANDED: