# CHARLESTON.

## RAVENSWOOD, S. & G. RY. CO. *v.* WOODYARD *et al.*

### Submitted January 12, 1899—Decided April 22, 1899.

1. CORPORATIONS—*Compensation of Officers—Stockholders.*

   A president or director of a private joint stock corporation can claim no compensation for services, as such, unless allowed by the stockholders.   [p. 561].

2. CORPORATIONS—*Compensation of Officers—Board of Directors—Stockholders—Ultra Vires.*

   A board of directors of a private joint stock corporation cannot allow compensation to a president or director for services, as such, without resolution or by-law of the stockholders, made prior to the rendering of such services.   An order for such allowance is *ultra vires,* and void, and may be repudiated by the corporation.   [p. 562].

3. CORPORATIONS—*Compensation of Officers—Fraud.*

   An order of a private joint stock corporation, making an allowance to its president or director for services, as such, made at a meeting where he participated in or was present at such allowance, is *prima facie* fraudulent and void as to the corporation.   [p. 563).

4. CORPORATIONS—*Officers—Trustees.*

   A president or director of a corporation stands as a trustee for it as to property of it committed to his hands for the purposes of the corporation.   [p. 563].

5. EQUITY JURISDICTION—*Corporations—Ultra Vires.*

   Equity has jurisdiction to declare null an order of the board of directors of a corporation that is *ultra vires,* and obstructs its rights to its property, though that order be void.   [p. 563].

Appeal from Circuit Court, Roane County.

Bill by the Ravenswood, Spencer and Glenville Railway Company against Harry C. Woodyard and others.   Decree for defendants, and plaintiff appeals.

*Reversed.*

H. P. CAMDEN, for appellant.

E. W. WILSON and J. W. C. ARMSTRONG, for appellees.

BRANNON, JUDGE:

The Ravenswood, Spencer & Glenville Railway Company, a corporation, filed a bill and amended bill in the circuit court of Roane County against the administrator and distributees of William Woodyard, deceased, which were dismissed upon demurrer, and the company appealed.

The bills, state, in substance, the following case: Said company was chartered to construct a railroad, and to raise means to do so it executed a mortgage upon its franchise and property to secure certain bonds issued by it for the purpose of being sold in the market. William Woodyard was the president and a director, and, while such, ten of said bonds, for one thousand dollars each, were committed to his hands as such president to sell for the benefit of the company, and he received them for that purpose, and was to account for their proceeds to the company; and he did return five of them to the company, but did not sell, or account for, or return, the remaining five bonds, but refused so to do, and converted them to his own use, though it was demanded of him by the company that he should return said bonds out of his private custody to the company; and he died, and the said bonds are in the custody of his administrator, who refuses to surrender them to the company. Said Woodyard, in order to give color of authority for his conversion and appropriation of said bonds, pretended that said company was indebted to him for certain alleged services rendered by him, amounting to five thousand dollars; and said Woodyard, on April 9, 1892, had a meeting of the directors of the company called for the purpose of allowing and approving his said account, and the board did meet and approve the same, and ordered it to be paid; and the said Woodyard had another meeting of the said directors called for August 9, 1892, for the purpose, among other things, of authorizing the appropriation of five of said bonds to the payment of his said account, and the said directors did meet on the last-named date, and passed an order reciting that at the former meeting Woodyard had presented an account for services rendered the said company, amounting to five thousand dollars, which was allowed and ordered to be paid, but, the same not having been paid, that the said Woodyard agreed to accept as payment of said account five of the company's first mortgage

bonds, and ordering that "the president of this company deliver to said Woodyard five of the said bonds in payment of his account." Said Woodyard, under said order, kept and appropriated to his own use the said five bonds. Said Woodyard was present at the meetings of the directors when said orders were passed, and signed the same as president. No salary or compensation was ever allowed by the stockholders of the company. Said Woodyard rendered no services, except those rendered by him as president, and there was never any allowance or authority by the stockholders on which he could base a demand for such services. The company claimed that he occupied a position of trust and confidence with reference to it, it being the *cestui que trust* and Woodyard the trustee, and that it was his special duty, as director and president, to see that the assets and funds were used for such purposes only as the law allows, and he was charged with the duty of protecting it against the fraud, so frequently perpetrated on corporations and their stockholders by the directors, of voting themselves salaries and compensation for pretended services, and applying the funds of the corporation to their payment; and that, as to these particular bonds, he held the double fiduciary relation of officer and special trustee. The bill claimed that all these transactions were, as to said bonds, a fraud against said company, and that said Woodyard did not render any services, as to it, of any kind, except as director and president, and that the company did not owe him anything therefor; that there was no agreement, in advance, or authority, to pay him for such services; that Woodyard was present at the meetings of the said directors when the question of allowing his said account, and of permitting him to appropriate five of said mortgage bonds in payment of the same, was being considered at said meetings of the 9th of April and 9th of August, 1892, and voted in favor of the passage of the orders above stated; that the directors who voted to allow said account, and permit Woodyard to appropriate the bonds in payment thereof, were mere nominal stockholders of the company, and large stockholders and real parties in interest were not represented on the board of directors or at said meetings. George W. Thompson was one of the large stockholders, and the agent of some others, and authorized to protect

their interests; and he, on July 29, 1892, by letter to Wood-
yard, repudiated the action of said directors. Negotiations
were pending from that time on to the date of Woodyard's
death between Thompson and Woodyard to effect a settle-
ment and adjustment of the matter,—Thompson writing
several letters to Woodyard, denying his right to said
bonds, claiming that they were still the property and assets
of the company notwithstanding the said orders of the di-
rectors, and demanding that said bonds be surrendered to
the company as still a part of its assets; but before any-
thing was accomplished both Thompson and Woodyard
died. Woodyard, however, claimed said bonds under said
orders of the directors, and refused to surrender them, as did
his administrator after his death. The bills prayed that
the action of the board of directors, in allowing said ac-
count and in authorizing Woodyard to appropriate said
bonds in payment of it, might be annulled and set aside,
and that the estate of Woodyard be compelled to account
to the plaintiff for said bonds, or their value, with inter-
est coupons thereon, and that a commissioner might be
directed to ascertain and report the market value of the
bonds and the amount of interest collected thereon by
Woodyard or his estate,—the bills having alleged that
Woodyard and his estate had collected interest thereon,—
and that a decree be made against said administrator for
the payment thereof, and that an injunction be awarded
against the Central Trust Company, which, as the bills
stated, was paying the interest coupons on said bonds,
to restrain further payments thereon. A decree declared
Woodyard to be the lawful owner of the said bonds at his
death, and dismissed the plaintiff's bills.

Upon demurrer a very important question arises,—not
only important for this case, but important generally in the
operation and administration of corporations. As I stated
in *Crumblish's Adm'r* v. *Improvement Co.* 38 W. Va. 403
(18 S. E. 456), the general rule everywhere denies compensa-
tion to the president of a private corporation, unless it be
authorized by the proper authority of the corporation, and
the law raises no implied promise to pay compensation to
directors or president, in the absence of provision in by-law
or order, they being trustees, and not entitled, as such, to
compensation. That position is sustained by the authori-

ties there cited, and also by many others. 4 Thomp. Corp. section 4682, says: "He is not entitled to any compensation for performing the ordinary duties of his office, unless the governing statute, or some by-law, regulation, resolution, or contract, to which his own vote was not essential, has given it to him. As the law does not imply an agreement to pay for such services, in order for him to recover compensation for them he must at least show an antecedent, valid agreement to pay for them." Even where by-laws provide that officers of a private corporation shall receive such compensation as shall be determined at an annual meeting of the stockholders, or at any special meeting called for that purpose, and none are ever so fixed, an officer will not be entitled to recover for services, in the absence of an agreement to pay him. *Linen Co.* v. *Hough,* 91 Ill. 63. Such is the general law; but our Code (chapter 53, section 53) says: "There shall be no compensation for services rendered by the president or any director, unless it be allowed by the stockholders." The directors have no power without the preceding authority of the stockholders granted to the directors. The only mode by which a president or director of a joint-stock corporation can get salary or pay is through the stockholders. Important policy and legislative purpose dictated that statute. It is a very prudent and safe one. The temptation to president and directors to vote themselves compensation, to the great prejudice of the great mass of stockholders, who are the real owners of its assets, and the directors but their agents, is very strong, and the statute ought to be rigidly enforced. I do not say that, after service rendered, the stockholders could not unanimously vote pay to such officers; but I do say that, without preceding authority from the stockholders, there is no shadow of power in the directors to do so.

The directors in this case allowed compensation for past services, when those services did not call for compensation under the law when rendered; and, the directors having no authority to charge the assets with a debt when there was no debt, their action would be *ultra vires.* Directors can only bind the company by lawful acts. They cannot bind the company for antecedent causes, constituting no ground of action. As stated in the quotation above from Thompson on Corporations, to give compensation there

must be antecedent authority. There must be a by-law or resolution fixing the allowance before service rendered. *Ellis* v. *Ward*, (Ill. Sup.) 25 N. E. 530; *Martindale* v. *Wilson-Cass Co.*, 134 Pa. St. 348, (19 Atl. 680.) And without such previous authorization the action of the board of directors allowing compensation imparts no validity to the claim. *Wood* v. *Manufacturing Co.*, (Or.) 23 Pac. 848. Where such unlawful appropriation is made, it may be repudiated by the corporation, or its receiver, and the sum wrongfully expended as compensation for past service of an officer may be recovered back. *Ellis* v. *Ward, supra*, There was no prior resolution or by-law of stockholders, or even of the directors, if the latter were competent, as it would not be, to justify the said action of the directors.

It appears above in the quotation from Thompson on Corporations that the president is not entitled to pay, even where there is such prior authority, if his own vote was essential in its passage. If so, the order of allowance without previous authority, the president himself participating in the action, would be vitiated thereby. Our Code (chapter 53, section 52) says: "No member of the board shall vote on a question in which he is interested otherwise than as a stockholder (except of the election of a president) or be present at the board while the same is being considered." Woodyard was present, and presumably took part in this action, and we may say voted for it; and we may say his vote might have been essential to its passage. It does not appear to the contrary, and this renders that action *prima facie* fraudulent and void, even if the directors had power, without prior authority from the stockholders, to pass the orders complained of. *Sweeney* v. *Refining Co.*, 30 W. Va. 443, (4 S. E. 431). So, those orders of the directors are for several reasons, above given, null and void, upon the showing of the facts contained in the bills. Those bills show cause of suit.

There can be no question about the jurisdiction of equity. It has jurisdiction to declare null the said orders of the directors, even though void, because they stand in the way of the plaintiff's right. *Ambler* v. *Leach*, 15 W. Va. 677. The directors and president occupy the relation of trustees to the corporation and its property. *Sweeney* v. *Refining Co.* 30 W. Va. 443, (4 S. E. 431). Therefore, the es-

tate of the trustee can be called on to account in equity, and the amended bill calls for an ascertainment of the value of the bonds, and what interest the trustee collected thereon, and an account thereof. "This will embrace suits against trustees,—including directors of corporations,—which, as stated, are particularly of equitable cognizance." Pom. Eq. Jur. section 1421, note 1. The beneficiary may always, in equity, compel the trustee to convey or assign the *corpus* of the trust property, and account for rents, issues, and profits. *Id.* section 1058; *Thornton* v. *Thornton*, 31 Grat. 212; *Berkshire* v. *Evans*, 4 Leigh, 223. Equity also has jurisdiction, because it is a demand against a dead man's estate.

It is said that the plaintiff's right has been lost by laches. When this suit was brought less than four years had elapsed from the orders of the directors under which Woodyard claimed these bonds. At law the owner of bonds would have five years in which to sue for them. It would be unreasonable to say that less than that period would bar by laches. Indeed, the matter is one between *cestue que trust* and trustee, and does not fall under the statute of limitations, and laches would not bar in so short a time, especially as the bill shows that the parties were negotiating for adjustment for a long while. It would be, indeed, a short time in which to bar under these circumstances. We reverse the decree, overrule the demurrers to the original and amended bills, and remand the cause, with directions to require the administrator and distributees of Woodyard to answer by a given time, and for further proceedings.

*Reversed.*