UNITED TOWING COMPANY, Greens Bayou Marine Service Company, John D. Jones and Holt P. Daniels, Appellants,

v.

H. A. PHILLIPS, Trustee, Appellee.

No. 16292.

United States Court of Appeals Fifth Circuit.

April 5, 1957.

Rehearing Denied May 17, 1957.

Willett Wilson, Houston, Tex., for appellant.

Thad Grundy, Houston, Tex., for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

John D. Jones, Holt P. Daniels, and Harland I. Casteel, owned all of the stock of C. J. Dick Towing Company, herein sometimes called Dick or the bankrupt. These three individuals owned substantially all of the stock of United Towing Company, herein referred to as United. Dick owned all of the stock of Greens Bayou Marine Service Company, herein called Greens Bayou. The three individuals were the officers and directors of each of the three corporations. On February 26, 1954, an involuntary petition in bankruptcy was filed against Dick and it was thereafter adjudged bankrupt. H. A. Phillips was appointed trustee of Dick, the Bankrupt, and brought suit against United, Greens Bayou, Jones and Holt to set aside as fraudulent a transfer of the Greens Bayou stock by Dick to United. Casteel lived in Pennsylvania and was not made a party. The district court held the transfer fraudulent and the defendants have appealed.

In the latter part of 1952 Dick was in financial difficulties. United had loaned Dick substantial sums. No notes or other evidences of indebtedness were given for these loans. More money was needed by Dick. United had negotiated for the sale of a tugboat from which it was about to receive some money. Daniels testified that,

"* * * we agreed by discussion, called Mr. Casteel, that United was to receive considerable sums of cash money from the sale of this boat and that we were willing to advance to C. J. Dick Towing Company almost the entire proceeds in excess of $100,000 to C. J. Dick Towing Company, but because of the fact that at that time there was already an existing debt owing by Dick to United, for the sake of other stockholders so we would not breach our fiduciary relationship to them, and so we would have some collateral or security that any loaning institution might require—the only thing that would be of any value to United to hold until those funds might be repaid was the stock in Greens Bayou Marine Service Company; and in December of 1952 and concurrent with the first tender of this 10,000-dollar check I have previously mentioned, we did in essence and in fact take the Greens Bayou stock out of Dick Company's file and place it in United Company's files. It had already been indorsed and was transferable after the indorsement of the stock; and that stayed in United's files until we actually concluded, as evidenced by the books on October 1, 1953, the actual surrender of that stock by United and issuance of new certificates by Greens Bayou to United for the stock in the company."

In the records of the Bankrupt are minutes of a meeting of its directors dated January 26, 1953, from which we quote the following:

"John D. Jones, President of the Company, stated to the meeting that

the Company was indebted to the United Towing Company at January 31, 1953, after all January transactions had been recorded in the approximate amount of $105,000.00. The President further stated that United Towing Company in consideration of its substantial recent cash advances to C. J. Dick Towing Company had demanded that appropriate guarantee of payment be made. The President fully considered the matter with United Towing Company and after lengthy discussion during which it was recognized that some portion of the indebtedness would be paid by C. J. Dick Towing Company prior to June 30th, 1953, in the approximate amount of $20,000.00 during the ordinary course of business between the two companies, United Towing Company offered to cancel and extinguish the sums due it on June 30th, 1953, in the amount of approximately $105,000.00 less whatever sums C. J. Dick Towing Company is able to repay in the interim period in exchange for the transfer to United Towing Company on October 1, 1953, of the common stock in Greens Bayou Marine Service Company held by C. J. Dick Towing Company, C. J. Dick Towing Company's note receivable from Greens Bayou Marine Service Company in the amount of $15,000.00 and the account receivable from Greens Bayou Marine Service Company owing to C. J. Dick Towing Company on October 1, 1953, in whatever amount was owing on that date.

"Upon lengthy discussion of these facts presented to the Board by the President with regard to indebtedness to United Towing Company the Board was of the opinion that the settlement proposed would result in conveyance of an equity in common stock worth about $95,000.00 together with notes and accounts receivable in excess of $35,000.00 for discharge of a debt amounting to about $85,000.00, however, inasmuch as United Towing Company has advanced during the last sixty days, upon guarantee of sufficient security, sums of money in excess of $88,000.-00 to secure the continued operation of C. J. Dick Towing Company, and without which funds C. J. Dick Towing Company could not continue to exist, there being no other source of capital available the Board

"Resolved that the President and Secretary and Treasurer be and hereby are authorized to accept the offer of United Towing Company and to discharge the indebtedness of United Towing Company in the manner outlined in these minutes by execution of appropriate instruments of transfer and assignment to United Towing Company."

Daniels testified that on the 5th or 6th of February, 1953, the offer of the Bankrupt, shown by its minutes, to exchange the stock for a cancellation of the debt, was accepted by United.

On October 1, 1953, the stock of Greens Bayou was transferred to United. This date was within a year prior to bankruptcy. On this date the indebtedness of the Bankrupt to United was $82,277.80. The district court found that the stock had a value at the time of the transfer of not less than $95,000. It found that the Bankrupt was insolvent in December, 1952, the time of the purported pledge, on January 26, 1953, the date of a meeting of the Bankrupt's directors as shown by the minutes, in February, 1953, the time of the alleged acceptance or ratification, and on October 1, 1953, the date of the transfer. The court found that the stock of Greens Bayou was not validly pledged by the Bankrupt to United in December, 1952, as the only evidence purporting to show a pledge was the taking of the stock certificate, which had been previously indorsed in blank, from one office room to another next door; that the corporate action of the Bankrupt at its directors' meeting of January 26, 1953, was not shown by convincing evidence to have become a binding contract; and that the stock was transferred by the

Bankrupt to United on October 1, 1953, for a consideration that was inadequate and unfair, and with an intent to hinder, delay and defraud the creditors of the Bankrupt. The district court found that the stock in the Bankrupt corporation of the three individuals, who acted for it and for United, had little if any value, and that by the transfer of the Greens Bayou stock the individuals profited by the benefit to United, and the financial condition of the Bankrupt was made worse. It was held that the transfer of the Greens Bayou stock was void under Sec. 67, sub. d(2) (a) of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. d(2) (a), Sec. 67, sub. d(2) (b) of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. d(2) (b), and Vernon's Ann.Civ.Stat. Art. 3996. Judgment was rendered directing United to transfer and deliver the stock to the plaintiff trustee in bankruptcy.

Appealing from the adverse judgment, United and its directors urge that there was a valid transfer by pledge in December, 1952, and by way of sale in January, 1953, or February, 1953, that the consideration was fair, and that the court considered evidence which had been excluded.

First for our consideration and, we think, the most important question to be resolved, is whether there was error in the determination of the district court that there was no valid pledge of the Greens Bayou stock by the Bankrupt to United in December, 1952. Corporate directors and officers are agents of the corporations electing or appointing them. The general rule, where two corporations have the same persons acting for them, has thus been stated:

"In accordance with the principle that a director or officer of a corporation cannot, without the knowledge and consent of the corporation or its stockholders, represent an adverse party to a transaction with the corporation, it is also true that where a transaction or contract is entered into between corporations having officers or directors in common, this circumstance will be considered and the transaction will be jealously regarded by the law." 13 Am.Jur. 953, Corporations § 1000.

A somewhat similar case had its origin in the Northern District of Texas and was twice before this court. Corsicana National Bank v. Johnson, 218 F. 822, Id., 237 F. 1016. On the first appeal a remand followed a decision on a procedural question. On the second appeal no opinion was written by this court. The Supreme Court of the United States reviewed the decision and in its opinion said:

"Was there good cause for the rescission? The fact that the same persons were directors and managers of both corporations subjects their dealings *inter sese* to close scrutiny. That two corporations have a majority or even the whole membership of their boards of directors in common does not necessarily render transactions between them void; but transactions resulting from the agency of officers or directors acting at the same time for both must be deemed presumptively fraudulent, unless expressly authorized or ratified by the stockholders; and certainly, where the circumstances show, as by the undisputed evidence they tended to show in this case, that the transaction would be of great advantage to one corporation at the expense of the other, especially where, in addition to this, the personal interests of the directors, or any of them, would be enhanced at the expense of the stockholders, the transaction is voidable by the stockholders within a reasonable time after discovery of the fraud." Corsicana National Bank v. Johnson, 251 U.S. 68, 90, 40 S.Ct. 82, 91, 64 L.Ed. 141.

The opinion from which the foregoing quotation was taken was followed two years later by another leading case in which the court used the following language:

"The relation of directors to corporations is of such a fiduciary na-

ture that transactions between boards having common members are regarded as jealously by the law as are personal dealings between a director and his corporation, and where the fairness of such transactions is challenged the burden is upon those who would maintain them to show their entire fairness and where a sale is involved the full adequacy of the consideration. Especially is this true where a common director is dominating in influence or in character. This court has been consistently emphatic in the application of this rule, which, it has declared, is founded in soundest morality, and we now add in the soundest business policy." Geddes v. Anaconda Mining Co., 254 U.S. 590, 599, 41 S.Ct. 209, 212, 65 L.Ed. 425.

The Geddes case is cited and the above quoted language is quoted with approval by the Court of Civil Appeals of Texas. Felty v. National Oil Co. of Texas, 155 S.W.2d 656. The doctrine is applicable where the directors of one corporation cause its property to be encumbered for the benefit of another corporation of which they are also directors. Sweeney v. Grape Sugar Co., 30 W.Va. 443, 4 S.E. 431, 8 Am.St.Rep. 88. Has United and its stockholding directors met the burden cast upon them?

The only evidence upon which they rely to sustain a pledge is the testimony of Daniels. It was his testimony that "We were willing to advance" funds to the Bankrupt, "and so we would have some collateral or security", that "the only thing that would be of any value to hold until those funds might be repaid was the stock in Greens Bayou Marine Service Company" and "we did in essence and in fact take the Greens Bayou stock out of Dick Company's file and place it in United Company's file". The "we" who were willing to advance funds were the directors of United, the "we" who would have some security were the directors of United, and they were the same persons who as "we", "did in essence and in fact" take the stock from the Bank-

rupt's file and transfer it to United's file although, in response to a leading question, Daniels testified that it was as an officer of United that he gave directions to its bookkeeper as to the place where the stock certificate should be kept. There was no writing to evidence either the debt or the pledge and there were no minutes of either pledgor or pledgee. The January 26, 1953, minutes recited a discussion of the proposed transfer of stock in cancellation of the debt but did not make reference to any prior pledge of the stock unless it can be said that there was such a reference in the recital commenting on United's advances to the Bankrupt "during the last sixty days upon guarantee of security".

The Texas statute, which the transfer challenged, is:

"Every gift, conveyance, assignment, or transfer of, or charge upon, any estate real or personal, every suit commenced, or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers, or other persons of or from what they are, or may be, lawfully entitled to, shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. This article shall not affect the title of a purchaser, for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor." Vernon's Ann.Civ.Stat. Art. 3996.

The provisions of Sec. 67, sub. d(2) which was the basis of the attack upon the transfer, are:

"Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor

who is or will be thereby rendered insolvent, without regard to his actual intent; \* \* \* or (d) as to then existing and future creditors, if made or incurred with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors". 11 U.S.C.A. § 107, sub. d(2).

 Amply supported by the evidence are the findings that there was no valid pledge of the Greens Bayou stock in December, 1952, and no valid transfer or agreement to transfer the stock prior to October, 1953. The evidence supports the district court's holding that the transfers were fraudulent under the Texas act and under the quoted provisions of the Bankruptcy Act. There seems to be no doubt as to the authority of a trustee in bankruptcy to attack a transfer fraudulent under the Texas statute. Reeves v. Powell, Tex.Civ.App., 267 S.W. 328.

The appellants assign error based upon the following statement in the district court's findings of fact:

"The record shows many transactions which I think show this [fraudulent] intent.

"There was offered, however, evidence of a number of transactions between Bankrupt and the Second National Bank of Houston which, if admissible in evidence, would have an important bearing on the question of such intent, but upon the objections of Defendants I have excluded them."

We do not regard this as showing, as appellants contend, that the court considered inadmissible evidence. On the contrary, it shows that the evidence, although material, has been excluded and had not been considered.

The appellants, in urging that the trial court was in error in finding the transfer of the stock unfair to the Bankrupt and for an inadequate consideration, attempt to demonstrate that the value of the Greens Bayou stock was considerably less than the amount of the debt of the Bankrupt to United rather than considerably more as found by the court. On confusing and conflicting evidence, which we have no occasion to here review, the court made findings amply supported. These findings we should not, even if so disposed, disturb.

We think the judgment entered was a proper one. It carries out sound policy as to the fiduciary obligations imposed upon corporate directors. The judgment is

Affirmed.