EMANUEL FELSENHELD, *Trustee, et al. v.* BLOCH BROTHERS TOBACCO COMPANY *et al.*

(CC 561)

Submitted April 21, 1937.   Decided June 26, 1937.

*Nesbitt & Nesbitt, McCamic & Clarke, Hughes, Schurman & Dwight, A. L. Richards* and *A. E. Stewart,* for plaintiffs.

*J. M. Ritz, Schmidt, Hugus & Laas* and *Edwards & Smith,* for defendants.

MAXWELL, JUDGE:

The circuit court has certified herein to this court the question of the sufficiency of an amended bill as amplified and supplemented in some of its features by a second amended bill. The allegations of the bills present different elements of controversy arising from the same subject matter. The circuit court sustained demurrers to certain features of the bills and overruled them as to others. The original bill is not involved as it was entirely supplanted by the amended bills.

The plaintiffs are Emanuel Felsenheld as trustee under the will of Aaron Bloch, deceased, and Nita Helen Fraser, individually, suing on behalf of themselves and all other stockholders of the Bloch Brothers Tobacco Company, a corporation, similarly situated. The defendants are the Bloch Brothers Tobacco Company, a corporation, Reliance Investment Company, a corporation, Samuel S. Bloch, Jesse A. Bloch, individually and as trustees under the will of Aaron Bloch, deceased, and numerous other persons, individually, and as officers or directors of one or both of the corporations named.

This is a stockholders' derivative suit. Such suit may be defined as an equity proceeding by a stockholder in a corporation for the purpose of sustaining, in his own name, a right of action existing in the corporation itself, and in which suit the corporation itself would be an appropriate plaintiff. *Dodge* v. *Woolsey,* 18 Howard (U. S.) 331, 15 L. Ed. 401. Consult: 13 Fletcher's Cyc. of Corporation Law, section 5911, and 6 Thompson on Corporations (3d Ed.), section 4562.

The plaintiffs' assertion of right to maintain this suit is based on a provision of the will of Aaron Bloch who died in 1903. By the pertinent testamentary provision, being section 4 of Item III of the will, there was created

a trust in a large block of the testator's shares of stock in Bloch Brothers Tobacco Company. This trust was for the benefit of the children of decedent's sister, Jennie Bloch Felsenheld. She died in 1930, survived by the plaintiff, Nita Helen Fraser, her sole descendant. The trustees under the recited trust are Samuel S. Bloch, Emanuel Felsenheld, Jesse A. Bloch and Harold S. Bloch. Under the terms of the trust the income, issues, profits and avails of the trust property are to be received by the trustees and applied for the benefit of the *cestui que* trust.

Generally stated, it is alleged by the plaintiffs that the three Blochs, defendants, trustees under the will of Aaron Bloch, deceased, have practically excluded Emanuel Felsenheld from participating in the trust; that they have suppressed vital information pertaining to the business of the Bloch Brothers Tobacco Company, though the same has often been requested by the plaintiffs; that the said trustees have voted the trust stock in furtherance of their own designs and plans in connection with the management of the Bloch Brothers Tobacco Company; that the three defendants mentioned dominate the affairs of the Bloch Brothers Tobacco Company; that the business of the Bloch Brothers Tobacco Company has been so directed, in some of its aspects, by the defendants, that great losses have come to the company and its stockholders. The plaintiffs sue to recoup, for the benefit of the Tobacco Company and its stockholders, the alleged losses, and to enjoin the continuance of alleged unlawful practices.

On their demurrer to the bills the defendants initially draw in question the right of the plaintiffs to maintain this suit. The demurrants say that the plaintiffs do not have a sufficiently tangible interest in the Tobacco Company to warrant the prosecution by them of a stockholders' derivative suit; that there is no allegation that any amount retrieved in this suit for the corporation would result in benefit to the plaintiffs.

The defendants' broad challenge of plaintiffs' right to prosecute this suit is not well taken. If the Blochs, defendants, have indulged in the improper practices alleged

against them, in conducting the business of the Tobacco Company and its subsidiary, Reliance Company, the stock of the Nita Fraser trust has the right to protection of a court of equity. If, through wrongful activities of the Blochs, the assets of the Tobacco Company have been materially reduced, as alleged by the plaintiffs, the value of the trust stock has been lessened thereby. Nita Fraser and the trustee, Felsenheld, are justified in seeking to have the *corpus* of the trust preserved in its entirety and to be augmented to the extent to which it is entitled, with improper practices eliminated from the company management. If, when proper basis of corporate management is established (if it does not now exist), the questions of adequacy of dividends and proper care in application of surplus present themselves, such matters may be considered in due course. The doors of equity will not be closed to a *cestui que* trust merely because his interest in the corporation, a portion of the stock whereof constitutes the *corpus* of the trust, is less direct than that of a legal stockholder with certificates of stock in his own right. Many cases confirm the right of *cestuis que trustent* to vindicate their rights in equity.

The defendants lay much stress on Item VII of Aaron Bloch's will. The item reads: "As to such part of my estate as at the time of my death shall be invested in stock of The Bloch Brothers Tobacco Company, and so long as and to the extent to which it shall remain so invested, I hereby direct my trustees aforesaid, to whom I have given and bequeathed the same in trust, to deal with and manage the same, and every interest, property and right which by means of the same they can control, direct, or otherwise affect, and in especial The Bloch Brothers Tobacco Company's business, in such manner as my said brother Samuel S. Bloch during his lifetime may direct, and after his decease, as a majority of such trustees as may survive him may direct, in each case free from any other restriction or obligation, express or implied, I having entire confidence in their judgment and good faith." Defendants say that this item carries wide grant of discretionary powers to Samuel S. Bloch; that,

in effect, he is by said paragraph vested with exclusive power and authority over all the matters complained of by the plaintiffs; that the only responsibility of the other trustees is to follow the direction of Samuel S. Bloch. We do not share this view of the extent of authority vested in Samuel S. Bloch. The construction urged would mean that within the realm of the trust his authority is absolute, without regard to whether it be reasonable or arbitrary. The proposed construction would further mean that though Samuel S. Bloch is dealing with a matter of high fiduciary relationship, for the protection and maintenance of which matters equity is always vigilant, he would nevertheless be above and beyond the reach of equity. This cannot be. We approve the trial chancellor's appraisement of Item VII. Respecting it, he said in his opinion: "It is simply a provision that the management of the company was not to be interfered with by the co-trustees. The management of the company means the legitimate management. As long as Mr. S. S. Bloch voted this stock in the carrying out of matters which he and his associates had a right to carry out, the judgment, providence and sagacity of his decisions could not be questioned. It is only if and when Mr. Bloch and his co-trustees go into forbidden fields that any right accrues to the plaintiffs." The conduct of the trustees, including Samuel S. Bloch, must be evaluated on a much more narrow basis than that urged by the defendants. Item VII affords no warrant of authority to the trustees to engage in unusual or unreasonable conduct respecting the trust, or so to manage the trust property as to advance the interests of favored persons at the direct or indirect expense of the *cestui que* trust.

Consideration thus having been given to pertinent generalities essentially prefacing a detailed discussion of the several elements of complaint, categorical discussion thereof proceeds, by articles.

*ARTICLE ONE. Alleged speculation on the stock market by the defendant officers and directors with funds of the Tobacco Company through the instrumentality of Reliance Investment Company.*

The trial chancellor sustained the demurrer to this feature of the bill.

Reliance Company was chartered in Delaware, in 1914. It is alleged that all of its original stock, except qualifying shares, was acquired by the Tobacco Company; that the Tobacco Company has acquired all the subsequent issues of stock of Reliance; that the Tobacco Company now owns 74,000 shares of stock of Reliance of a total par value of $370,000.00; that the Blochs, defendants, and the other defendant directors of the Tobacco Company have caused approximately $5,000,000.00 of the funds of the Tobacco Company to be paid to Reliance for the said stock; that the Blochs, defendants, are in complete management and control of Reliance; that the respective directors and boards of directors of Reliance, as constituted at diverse times, have been elected for the sole purpose of carrying out the policies of the Blochs, defendants; that at the January, 1915 meeting of the stockholders of the Tobacco Company, its directors reported the initial purchase of 19,985 shares of the capital stock of Reliance "for the purpose of more convenience in handling the investment of the funds" of the Tobacco Company; that thereupon, a majority of the stockholders present approved the plan; that the trust stock hereinabove mentioned was voted at that meeting by Samuel S. Bloch, as one of the trustees, without the knowledge or consent of his co-trustee, Emanuel Felsenheld, who was absent from the meeting; that until about the year 1925, the funds of Reliance, acquired from the Tobacco Company, were invested almost entirely in bonds of industrial corporations and government securities; that beginning about 1925 and continuing to the time of the institution of this suit the Bloch defendants, with the knowledge, consent and permission of the other defendant directors of the Tobacco Company, and Reliance, have unlawfully, wrongfully and negligently caused and permitted Reliance to use large parts of the funds acquired from the Tobacco Company, in dealing, speculating and trading on the stock market in the stock of corporations and other securities of a speculative char-

acter; that the amount of the funds so employed has ranged from about $825,000.00 to more than $2,800,-000.00; that, through Reliance, large amounts of funds of the Tobacco Company have thus been unlawfully paid out, expended, misapplied and wasted, and that the said speculations have resulted in great loss to both Reliance and the Tobacco Company, the amount of which loss is unknown to the plaintiffs and can be ascertained only on an accounting to be had in this suit.

Though an industrial corporation, within legal and appropriate limits, may, through the instrumentality of a corporate subsidiary, provide for the investment of its funds not immediately employed in its business, it does not follow that under such arrangement, or otherwise, there may be adopted a program of extensive speculation with corporate funds.

We are of opinion that the allegations of the amended bill and the second amended bill as to speculations, and losses resulting therefrom, sufficiently present a *prima facie* case, respecting both an accounting for prior transactions and an injunction against continuation or repetition of speculating practices, if it be found that such have existed.

Nor are we of opinion, as contended for by the defendants, that the plaintiffs' complaint of unwarranted speculations is barred by the statute of limitations. The allegations in this particular raise the question of violation of trust—a matter peculiarly of equity cognizance. Corporate directors, whether technically trustees or not, bear a relation of trust and confidence to their principal and its stockholders. *Young* v. *Columbia Oil Co.*, 110 W. Va. 364, 158 S. E. 678. In conformity, *Ravenswood S. & G. Ry. Co.* v. *Woodyard*, 46 W. Va. 558, 33 S. E. 285: "A president or director of a corporation stands as a trustee for it as to property of it committed to his hands for the purposes of the corporation." See also, *State* v. *Brast*, 98 W. Va. 596, 127 S. E. 507; *Sweeny* v. *Sugar Refining Co.*, 30 W. Va. 443, 4 S. E. 431, 8 Am. St. Rep. 88. "Courts of equity have always claimed and exercised exclusive jurisdiction in cases of trusts and over the

conduct of those appointed to execute them. This has never been disputed ground. No other tribunal can so properly direct the manner of executing them, or inquire into and correct abuses where there has been, or is likely to be, mismanagement by the trustees." 10 Ruling Case Law, p. 349. Consult, 21 Corpus Juris, p. 116; 13 Fletcher's Cyc. of Corporation Law, p. 247; 1 Pomeroy's Equity Jurisp., (4th Ed.), section 137. This principle was applied by this court in *Wilson* v. *Kennedy*, 63 W. Va. 1, 59 S. E. 736, 739. Therein the court said: "This case being one for an accounting under a trust, it is peculiarly under the jurisdiction of equity."

Thus, in the case at bar, involving matters primarily for equitable determination, not mere legal demands, the statute of limitations is inapplicable. "The statute of limitations never runs against a right, the vindication of which belongs to the exclusive jurisdiction of the equity courts." *Depue* v. *Miller*, 65 W. Va. 120, 64 S. E. 740, 23 L. R. A. (N. S.) 775.

The plaintiffs aver that they had no knowledge of the alleged speculations, and no means of obtaining such information, until the year 1931 when they caused an examination of the corporate books to be made under court authority. This suit was instituted within a few months thereafter. So far as appears from the bills there was no laches in this particular.

For the reasons thus stated we are of opinion that the demurrer to the bill in this respect should have been overruled, and that the trial court erred in sustaining the demurrer to this item of the amended and second amended bills.

*ARTICLE TWO. Extensive and repeated loans of funds of Bloch Brothers Tobacco Company to the Bloch defendants through a long period of years.*

The court sustained the demurrer to this feature of the bills.

It is alleged that beginning soon after the election of Samuel S. Bloch to the presidency of Bloch Brothers Tobacco Company, he and Jesse A. Bloch and Harold S.

Bloch, with the consent and approval of the other directors of the company, borrowed many thousands of dollars of company funds, without security, and at less than the legal rate of interest of six per centum per annum; that the plaintiffs had no knowledge of these loans until they obtained an inspection of the company's books and papers in 1931. The plaintiffs pray that the defendants, Blochs, be compelled to account for and immediately pay over to the company the unpaid balances of their respective loans, with interest at the rate of six per centum per annum, and that as to all of such loans which may have been discharged the said defendants be required to account for the difference between the amount which should have been paid at the lawful rate of interest and the amount which they have actually paid under lesser rates; further, that the directors of the Tobacco Company and of Reliance be perpetually enjoined and restrained from making any further loans of the funds of either of said companies to any officer, director or stockholder.

From a schedule of such loans filed as an exhibit with the amended bill, it appears that all moneys so borrowed by the Blochs have been repaid by them to the corporation, except a balance of $4240.00 owing by Harold S. Bloch. The only question, then, with respect to this borrowing is the rate of interest at which the borrowers should have accounted. Recent loans have been on the basis of six per centum interest.

It is not inherently wrong for surplus funds of a corporation to be loaned to its officers or directors. 14-a Corpus Juris, p. 111; *Griffith* v. *Boom & Lumber Co.*, 55 W. Va. 604, 48 S. E. 442, 69 L. R. A. 124. Such transactions, of course, must be free from fraud; and, on behalf of the corporation, the matters must be determined by directors not interested in the loans. In this particular, the plaintiffs rely on their averment that the defendants, Blochs, dominated the Tobacco Company directorate, and therefore, the interests of the corporation were not properly conserved in the making of these loans. Granting the impropriety of dominating directors borrowing

heavily from their corporation, it does not follow that such transactions are necessarily illegal, or that they are, unless participated in by the vote of the director whose conduct is questioned, inherently violative of the trust and confidence which is reposed in directors under the law. The reason for interposition of equity in such matters is therefore not clear. Especially is this true where it does not appear from allegations of the bill that surplus funds of the corporation could have been safely invested at a more substantial yield than was realized from the interest paid by the borrowing directors. If the borrowing of the money by the directors named had been essentially illegal the law would have imposed on them the necessity of accounting for the funds with six per centum interest, but their status not being essentially an illegal one, they should not be required to account for more than the rate of interest for which they contracted, in the absence of fraud. No fraud is charged.

Respecting the proposed injunctive relief attending this feature of the case, it would seem that on the basis just stated it is not to be anticipated there will be corporate lending wherein the rights of the corporation cannot be vindicated in a court of law.

We are therefore of opinion that the trial court committed no error in sustaining the demurrer to this element of the amended bill and second amended bill.

*ARTICLE THREE. Alleged improper dealings by the Bloch defendants respecting employees' stock subscription plan adopted by the Tobacco Company in July, 1923.*

The court overruled the demurrer to this feature of the bill "except as to claims, demands or alleged causes of action accruing more than five years prior to the bringing of this suit," and as to such claims, demands or causes of action the demurrer was sustained.

It is alleged that about December, 1922, the Tobacco Company had in its treasury 40,000 shares of new common stock of the par value of $25.00 per share, after there had been issued to the stockholders 240,000 shares in exchange for old stock; that in January, 1923, at a

general stockholders' meeting, Samuel S. Bloch, president, suggested the advisability of a plan whereby employees of the company would be induced to become stockholders, and reported that the directors had been giving attention to a proposed plan; that by a majority vote of the stock present the board was given authority to proceed further with such plan; that at the stockholders' meeting the trust stock of the Aaron Bloch estate was voted for the plan by Samuel S. Bloch without the knowledge or consent of Emanuel Felsenheld, trustee, or his co-plaintiff; that in July, 1923, the board adopted a plan which purported to be an "offer of common stock of the Bloch Brothers Tobacco Company to its employees"; that the plan provided for the selling of stock to employees at $25.00 per share, with a bonus distribution of seventy-five cents per share on all subscriptions which were paid in full within a designated period; that the actual value of the stock thus being offered to the employees was substantially in excess of the par value; that from the years 1923 to 1930, inclusive, the Bloch defendants and other defendant directors of the Tobacco Company, acting under the domination and control of the Blochs, in pretended pursuance of said plan, caused to be sold and issued to the Blochs large amounts of new common stock at its par value, and caused to be paid to the Blochs annual bonuses of seventy-five cents per share as provided for in the plan for employees, the number of shares thus acquired and the amount of bonuses received being set forth in detail in the bill; that "in view of the said large stockholdings of the said Bloch defendants and their domination and control over the affairs of the said Tobacco Company, it was not in accordance with the purported or stated purpose of the said employees' stock subscription plan or advisable or necessary in the interest of the said corporation that they should be permitted to purchase such additional stock on such advantageous terms or to receive the bonuses paid to them thereon."

In this behalf the plaintiffs pray that the Bloch defendants be required to account for and pay over to the

Tobacco Company the aggregate of all sums of money received by them as bonuses or dividends upon the stock issued to them under the employees' stock subscription plan; that the directors be enjoined from permitting the issuance of further stock to the defendants, Blochs, under the stock subscription plan; and that the directors likewise be enjoined from declaring or paying out any dividends or bonuses on any of the stock acquired by the Blochs under the subscription plan.

Obviously, the stock subscription plan was for the purpose of inducing employees to become financially interested in the company through the ownership of stock. The plan carried the laudable two-fold purpose of benefiting both the company and the employees. The acquisition of more stock by dominating stockholders and officials of the company is entirely beyond the scope and purpose of the plan under either of its aspects. It was not to the advantage of the company for them to acquire more stock, nor were they so situated that it was pertinent for the company to undertake to assist them in their financial status by providing for them an easy payment plan for purchase of stock at less than its actual value.

If, on final hearing, the allegations of the bills concerning the activities of the defendants, Blochs, in their dual capacity of trustees and directors, respecting the employees' stock subscriptions, are sustained, there will have been established a violation by them of the fiduciary relationships occupied by them both as trustees under the Aaron Bloch will and as directors of the Tobacco Company. Thus there is presented a matter peculiarly within the jurisdiction of equity, there to be considered and determined. The statute of limitations is therefore not applicable. Neither does it appear that the plaintiffs have been guilty of laches in connection with this matter. Their information was acquired only a few months before the institution of this suit.

Consequently, we are of opinion with regard to the stock subscriptions of the defendants, Blochs, under the employees' stock subscription plan, that the trial chancel-

lor correctly overruled the demurrer as to items within the period of five years next preceding the institution of this suit, and that the chancellor erred in sustaining the demurrer as to items preceding the five-year period.

*ARTICLE FOUR. Gratuities paid by Reliance to certain of its officers and one director beginning about the year 1921 and continuing to the institution of this suit.*

The circuit court overruled the demurrer to the bills in this particular, except as to items more than five years prior to the institution of the suit, and as to such items the demurrer was sustained.

The circuit court concisely summarized as follows the plaintiffs' allegations respecting gratuities: "On January 12, 1921, Jesse A. Bloch was re-elected president of Reliance for the ensuing year. Up to that time he had served without compensation and no provision was made for compensation at that time. He served during that year without compensation and, after the completion of his services for that year, the defendant directors of Reliance caused him to be paid the sum of $2500 'for compensation for the year 1921' for his services as president during said year. He was then re-elected for another year with no provision as to compensation and at the end of the year the same award and payment were made, and this was duplicated in 1923, 1924, 1925 and (without re-election) in 1926. In 1927 the sum of $5,-000 was similarly paid and in 1928 $7,500; in 1929, $10,-000. On January 8, 1930, when he was re-elected the directors fixed his salary at five thousand dollars per year. At the end of that year he was paid $5,000 additional compensation. In 1931 he received the fixed salary but plaintiffs allege on information and belief that he was paid further compensation for both 1931 and 1932. Similar allegations are made in regard to Harold S. Bloch as treasurer of Reliance, William M. Tiernan as director and Robert Lee Boyd as secretary."

The aggregate of the alleged gratuities is somewhat over $100,000.00, whereof about ninety per centum is averred to have been received by Jesse A. Bloch and

Harold S. Bloch. It is alleged that these gratuities were paid on the order of the board of directors.

Plaintiffs pray that the defendants, Jesse A. Bloch, Harold S. Bloch and the other defendant directors of said Reliance Investment Company, and each of them, be compelled to account for and to pay over to Reliance Investment Company the amount of all gratuities or bonuses paid to the defendants, Jesse A. Bloch, Harold S. Bloch, William M. Tiernan and Robert Lee Boyd, from the funds of said Reliance Investment Company as compensation for past services rendered by the said Jesse A. Bloch, Harold S. Bloch, William M. Tiernan and Robert Lee Boyd, respectively, as officers or directors of the said corporation, and the amount of all alleged compensation received by said defendants in excess of the reasonable value of the services rendered by them to Reliance Investment Company; and that the defendant directors of said Reliance Investment Company be perpetually restrained and enjoined from hereafter granting gratuities.

The circuit court, in written opinion, aptly said: "The law of gratuities is a comparatively simple one. It is that one may not give away the property of another. Thus, while the directors may not give away the property of a corporation, the stockholders, acting all together, may do so, as long as no fraud is perpetrated on a creditor thereby."

The only proper manner through which a president or director of a private corporation may obtain salary or bonus is through appropriate action of the stockholders. "A board of directors of a private joint stock corporation cannot allow compensation to a president or director for services, as such, without resolution or by-law of the stockholders, made prior to the rendering of such services. An order for such allowance is *ultra vires,* and void, and may be repudiated by the corporation." *Ravenswood S. & G. Railway Co.* v. *Woodyard,* 46 W. Va. 558, 33 S. E. 285. In the recent case of *Charter* v. *Doddridge County Bank,* 117 W. Va. 742, 188 S. E. 486, Judge Kenna, speaking for the court, said that if corporation

officers "are to be compensated for their services to the corporation as such, there must be a contractual understanding in advance of the performance of the services. Otherwise, they are not to be compensated. This seems to be so regardless of the extent of the services that they perform as such officers." In the case of *Collins* v. *Hite*, 109 W. Va. 79, 153 S. E. 240, 241, we held that any sums paid out of a corporation's treasury to an officer for services already performed in excess of compensation initially authorized, would be a bonus, or gift; that such gratuity could not be confirmed by a mere majority of the stockholders; that such action "would amount to taking money out of the minority stockholders' pocket and giving it to another."

The gratuities under discussion, if truly alleged, constituted violations of trust and confidence on the part of both the directors who authorized them and the officers who received them. Such matter is for cognizance of equity. The statute of limitations has no application. The plaintiffs having instituted this suit promptly after obtaining information about the matters involved, there was no laches.

Therefore, we are of opinion that the trial court committed no error in overruling the demurrer to the allegations of the amended bill respecting the matters discussed in this article to the extent that they arose within the period of five years preceding the institution of this suit, but that the court erred in sustaining the demurrer as to such of said items as ante-dated the five-year period.

*ARTICLE FIVE. Alleged excessive salaries paid by Reliance to certain of its officials and a director.*

The circuit court sustained in part and overruled in part the demurrer to allegations respecting this feature of the case, the rulings being the same as with reference to alleged gratuities under Article Four, *supra*.

It is alleged that the salaries and gratuities paid by Reliance to the defendants, Jesse A. Bloch, Harold S. Bloch, William M. Tiernan and Robert Lee Boyd, "were not only wrongful and unlawful in that they were paid

out without consideration for past services rendered, and without any prior agreement by Reliance for the payment of the same, as heretofore alleged, but also said payments of salaries and gratuities were, and each of them was, grossly in excess of the reasonable value of any services rendered by any of such respective officers to Reliance, for which services such salaries and gratuities purported to be paid, and that the payment of said salaries and gratuities by the defendant directors of Reliance was a wrongful wasting of the assets and property of the said corporation."

The plaintiffs pray that the directors of Reliance be required to account for and pay over to that company the amount of all compensation, in excess of reasonable compensation, authorized by the directors to be paid to officials of Reliance.

For the reasons discussed under Article Four, *supra,* we are of opinion that the trial court should have overruled in its entirety the demurrer to the allegations of the bills respecting excessive salaries paid by Reliance.

*ARTICLE SIX. Alleged gratuitous or nearly gratuitous salary of $20,000.00 per year paid by the Tobacco Company to Samuel S. Bloch, president.*

The trial court sustained the demurrer to this feature of the amended bill and second amended bill.

It is alleged that from about the year 1920 to the time of the institution of this suit, Samuel S. Bloch failed to discharge the duties reposed in him as president of the Tobacco Company and has spent the greater part of his time in practical retirement and leisure, traveling much in Europe and elsewhere, and that he and Jesse A. Bloch and Harold S. Bloch, with consent and permission of the other defendant directors of the Tobacco Company, have caused to be paid to Samuel S. Bloch for services as president of said company, an annual salary of $20,-000.00; that such salary has been in fact an annual gift to Samuel S. Bloch, beyond the power of the Tobacco Company to make, and that the stock in the Aaron Bloch trust was voted by the Bloch defendants as trustees in

favor of said gratuitous salary without the knowledge or consent of their co-trustee, the plaintiff, Emanuel Felsenheld, and that each payment constituted a wasting, spoilation and misapplication of the assets of the Tobacco Company. In this connection, it is further alleged that for the years 1920, 1921, 1922 and 1923 the matter of salary of Samuel S. Bloch was not acted on by the stockholders; that for the years 1924 to 1931, inclusive, excepting 1927, there was a resolution passed at the stockholders' meeting the beginning of each year that for the ensuing year the salary of Samuel S. Bloch as president should be $20,000.00, but that at each meeting, without the consent or approval of Felsenheld, trustee, the Aaron Bloch stock was voted by the Bloch trustees in favor of the said salary; that at the stockholders' meeting in January, 1927, Emanuel Felsenheld was present, and, under duress, joined with his co-trustees in voting the Aaron Bloch stock in favor of the president's salary for that year; that at the general stockholders' meeting in January, 1932, Emanuel Felsenheld, individually and as trustee under the will of Aaron Bloch, deceased, protested against the continuance of the payment of a salary of $20,000.00 to Samuel S. Bloch, but that his protest was ignored by his co-trustees who proceeded to vote the Aaron Bloch stock in favor of the proposed salary for the president for that year.

In this particular, the plaintiffs pray that Samuel S. Bloch be required to account for and pay over to the Tobacco Company the amount of all sums received by him as salary from the Tobacco Company in excess of the reasonable value of services rendered by him as president, and that the directors be enjoined from hereafter paying to Samuel S. Bloch out of the funds of the Tobacco Company any sums or salary in excess of the reasonable value of services rendered by him as an officer of the corporation.

Under this article, we are not concerned with the question of salary or bonus attempted to be bestowed after the expiration of the period during which service was rendered, as presented under Article Four herein-

above. We are here concerned with the matter of the annual fixing in advance of salary for services to be rendered during the ensuing year.

The plaintiffs charge first that the Bloch defendants, with the permission of other defendant directors of the Tobacco Company, "caused large amounts of money of the said company, to-wit: $20,000.00 per annum, to be paid over to the said defendant, Samuel S. Bloch as salary * * *"; then they set forth in detail the circumstances attending several annual meeting of stockholders, as above recited, and take the position that the action at the successive stockholders' meetings, in respect of the salary of the president, was illegal because to make up the several majorities which were voted in favor of the resolution fixing such salary the stock of the Aaron Bloch trust was illegally voted. The situation respecting 1932 is somewhat different from the immediately preceding years because at the 1932 stockholders' meeting, Emanuel Felsenheld, in his own right and as trustee under the Aaron Bloch will, protested against the Samuel S. Bloch salary of $20,000.00.

By section 53, chapter 53 of the Code of 1923, it was provided that "there shall be no compensation for services rendered by the president or any director as such, unless it be allowed or authorized by the stockholders." Such was the law of the state for many years, and until January 1, 1931, when the new Code became effective. The quoted section does not appear in the present Code. The statute now provides: "The board of directors may exercise all of the powers of the corporation, except such as are by law or by the charter or by the by-laws conferred upon or reserved to the stockholders." Code 1931, 31-1-17. The question of the salary of Samuel S. Bloch for 1932 and subsequent years will have to be considered in the light of this statute. Even though his salary for 1932 and subsequently may not have been regularly authorized by the stockholders, determination must be made whether for those later years his salary was properly provided for by the board of directors. The action with reference to the 1932 salary may require deter-

mination on the same basis as that employed with reference to the next preceding years, but that should be resolved by the chancellor in the light of further developments. The allowance of the salary for 1931 is not affected by the statute for reasons next herein stated.

In respect of the Samuel S. Bloch salary for the years 1924 to 1931, inclusive, there was stockholders' authorization annually in advance. The bill so alleges. But the plaintiffs urge that such action was made possible only by reason of the action of three of the Aaron Bloch trustees voting the trust stock in favor of the president's salary. From the viewpoint of the corporation itself, the action of the stockholders in this particular was regular and proper. The corporation could not now sue to recover such salary or any part of it. Nor can the plaintiffs, in a derivative suit, such as at bar, successfully press such claim. Whether the *cestui que* trust has right of action against the three Bloch trustees for allegedly improperly voting the Aaron Bloch stock in support of the successive resolutions fixing the president's salary, is a matter to be determined if and when it arises.

As to the Samuel S. Bloch salary for years 1920 to 1923, inclusive, the averments of the bills that such salary was unauthorized by the stockholders, is sufficient to justify and require equitable cognizance of the matter. If this allegedly improper and unlawful course respecting the salary for the years 1920 to 1923, inclusive, was in fact pursued, there was thereby involved a breach of trust on the part of Samuel S. Bloch and the other directors of the Tobacco Company. The statute of limitations is not applicable to such situation. Nor are the plaintiffs guilty of laches in this respect because, although they learned in 1926 that Samuel S. Bloch was receiving a salary of $20,000.00 per year, they did not know until 1931 that the salary had been paid for the years 1920 to 1923, inclusive, without even an attempted authorization by the stockholders.

These considerations lead us to the conclusion that the trial chancellor properly sustained the demurrer to the allegations under this article respecting the years

1924 to 1931, inclusive, but that as to the years preceding and subsequent to that period, the demurrer should have been overruled.

Thus having responded to the queries arising under the various elements of the certification, we affirm the circuit court in the particulars approved above, reverse as to disapproved items indicated, and remand the cause for further proceedings not at variance with the principles herein announced.

*Affirmed in part; reversed in part; remanded.*