498 S.E.2d 241

Jerry A. VORHOLT, Plaintiff
Below, Appellant,

v.

ONE VALLEY BANK (formerly The Ka-
nawha Valley Bank, N.A.), One Valley
Bank, a National Banking Association,
(formerly The Kanawha Valley Bank),
Trustee of the Ansel F. Vorholt Trust,
Leo J. Vorholt, Jr., Edward Vorholt, Ar-
chie Vorholt, Ruth V. Childress, Cather-
ine V. Melton, and the most Reverend
Bernard W. Schmitt, D.D., Bishop of the
Roman Catholic Diocese of Wheeling–
Charleston, and his successor in office,
and all other known and unknown heirs
at law of beneficiaries or other benefi-
ciaries, known or unknown of the Ansel
F. Vorholt Trust, Defendants Below, Ap-
pellees.

No. 23589.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 28, 1997.

Decided March 28, 1997.

Concurring and Dissenting Opinion of
Chief Justice Workman July 21, 1997.

Concurring and Dissenting Opinion of
Justice Starcher May 8, 1998.

Robert G. Wolpert, Charleston, for Appellant.

James K. Brown, Kelly L. Mount, Jackson & Kelly, Charleston, for Appellees.

MAYNARD, Justice:

The appellant, Jerry A. Vorholt, appeals the May 17, 1995 order of the Circuit Court of Kanawha County which granted summary judgment for the appellee, One Valley Bank, finding that the appellant's suit against the appellee for failing to include him in the distribution of his adoptive father's estate is barred by the statute of limitations. For reasons set forth below, we affirm the circuit court's order.

## I

On April 20, 1955, Ansel F. Vorholt made his Last Will and Testament. This will provided that Mr. Vorholt's estate was to be transferred in trust to the appellee, One Valley Bank, National Association, then known as Kanawha Valley Bank. Shortly after making the will, Mr. Vorholt died on May 17, 1955. The term of the trust was "to be renewed by the interval of time elapsing between the date [of the testator's death] and twenty-five years thereafter." The trust, therefore, terminated on May 17, 1980. During the trust's existence, one-third of the trust income was to be distributed to Ansel F. Vorholt's nephew, Leo Vorholt, the adoptive father of the appellant, Jerry A. Vorholt.[1] If Leo Vorholt died before the trust's termination, his income interest was to pass *per stirpes* to his "children and descendants." Upon the trust's termination, one-third of the estate was to be distributed to Leo Vorholt, or, if he was deceased, to his descendants *per stirpes.*

After Ansel F. Vorholt's death, the appellee, as executor, administered the estate, principally consisting of the establishment of the trust. Two years later, in 1957, Leo Vorholt adopted the appellant. From 1955 until 1970, the appellee made distributions of one-third of the trust's income to Leo Vorholt in accordance with the terms of the trust.

In 1970, Leo Vorholt died.[2] As previously indicated, his income and remainder interest in the trust established by Ansel F. Vorholt

was to pass to his "children and descendants" *per stirpes* in accordance with Ansel F. Vorholt's will. When Leo Vorholt died, he had two natural children in addition to the appellant. The appellee was immediately faced with the issue of whether the appellant, an adopted child, would benefit as a "descendant" under the testamentary trust. In deciding this issue, the appellee relied on a legal opinion prepared by counsel concluding that the appellant, as an adopted child, was not entitled to share as a beneficiary in the trust.[3] As a result, the appellant did not receive any income distributions made to the beneficiaries under the trust.

The trust terminated on May 17, 1980, twenty-five years after the testator's death. The appellee, as trustee, made distributions of the real property corpus of the trust to the beneficiaries of the remainder interest as it had determined them in 1970, again excluding the appellant. On August 25, 1980, the appellee recorded the deed granting legal title to the real property corpus of the trust to the beneficiaries, and completing its administration of the trust. The surviving beneficiaries entered into an Agency Agreement with the appellee on May 4, 1989, authorizing the appellee to manage the real estate previously distributed from the trust.

In 1989, a lawyer questioned the title to the real property in light of the fact that the appellant had been excluded. A representative of the appellee contacted the appellant about this issue in May 1989. According to

---

1. In addition, one-third of the trust's income was to be equally divided between the testator's other six nephews and nieces, and the remaining one-third was to go to the Sacred Heart Catholic Church of Charleston, West Virginia. In this case, we are only concerned with how the provisions of the trust apply to the appellant, Jerry A. Vorholt.

2. The appellant was seventeen years of age at the time of Leo Vorholt's death.

3. In 1955, when the testator made the will, adopted children could not take through intestate succession according to W.Va.Code, 48–4–5. Also, this Court essentially held in *Wheeling Dollar Savings & Trust Co. v. Stewart*, 128 W.Va. 703, 37 S.E.2d 563 (1946) that the term "descendant" in a will did not include adopted children. This became known as the exclusion presump-

tion. In 1959, W.Va.Code, 48–4–5 was amended to include adopted children, indicating a substantive change in public policy. However, in *Security National Bank & Trust v. Willim*, 151 W.Va. 429, 153 S.E.2d 114 (1967) this Court reaffirmed that the exclusion presumption governed the intent of testators for wills made before the 1959 amendment. In 1977, in *Wheeling Dollar Savings & Trust Co. v. Hanes*, 160 W.Va. 711, 237 S.E.2d 499 (1977), we essentially overruled the 1967 *Willim* decision by rejecting the exclusion presumption and adopting an inclusion presumption for trusts created prior to 1959. The second issue raised by the appellant in his brief to this Court was his right under the above-mentioned law to take as a beneficiary under the trust. Because we find that the appellant's cause of action herein is barred by the statute of limitations, we do not reach this issue.

the appellant, this was the first time that he became aware of the trust in question or of his possible interest in the trust.

The appellant filed suit against the appellee on February 11, 1992, alleging, in effect, that the appellee breached its fiduciary duty in excluding him from the distribution of the trust. By order of May 17, 1995, the circuit court granted summary judgment to the Bank on the grounds that the appellant's claims were time-barred under all potentially applicable statutes of limitations and were dependent upon an unwarranted retroactive application of a judicial change in substantive law. Because we agree with the circuit court that the appellant's claims are time-barred, we do not reach the substantive law issue.

## II

At the outset, we point out that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Furthermore, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Accordingly, "[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus Point 4, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). With this in mind, we will now examine the case before us.

## III

The issue is whether the appellant's claims for relief against the appellee are barred by the statute of limitations.

First, we must determine whether the appellant's suit is governed by the statute of limitations. It is the position of the appellant that his suit against the appellee is

in equity, and, therefore, no statute of limitations is applicable. We do not agree. This Court has stated that: "Statutes of limitations are not applicable in equity to subjects of exclusively equitable cognizance. Matters pertaining to fiduciary relationships come within the rule." Syllabus Point 3, *Felsenheld v. Bloch Bros. Tobacco Co.*, 119 W.Va. 167, 192 S.E. 545 (1937). An action concerning the violation of a trust is "a matter peculiarly of equity cognizance" in that "[c]ourts of equity have always claimed and exercised exclusive jurisdiction in cases of trusts and over the conduct of those appointed to execute them." *Felsenheld*, 119 W.Va. at 173–174, 192 S.E. at 548. We have also recognized, however, that the statute of limitations is tolled only so long as the trust continues, so that once the trust ceases, the statute of limitations begins to run. *Bennett v. Bennett*, 92 W.Va. 391, 398, 115 S.E. 436, 438 (1922) ("... direct or express trusts, so long as they continue as between trustee and the beneficiary, are not subject to the statute of limitations ..."). There are different ways in which the statute of limitations may begin to run. For example, once a trustee notifies a beneficiary that he or she is repudiating the trust, the statute of limitations begins to run. In Syllabus Point 3, *Currence v. Ralphsnyder*, 108 W.Va. 194, 151 S.E. 700 (1929) we stated: "The statute of limitations does not run against an express trust until the beneficiary has notice that the trustee has repudiated the trust." *See also Crawford v. Caplinger*, 110 W.Va. 498, 158 S.E. 717 (1931). Also, it has been recognized elsewhere that once a trust terminates by its own terms, the activities of the trustee become subject to the running of the statute of limitations.

The oft-stated rule that the statute of limitations does not run in favor of a trustee until he renounces or repudiates the trust applies only to existing and subsisting trusts; and when an express trust terminates and comes to an end by its express terms, no act of repudiation or renouncement, in addition to the failure to pay over the trust fund to those entitled thereto, is necessary to start the statute running.

*Emmerich v. City Bank Farmers Trust Co.,* 83 N.Y.S.2d 840, 844 (1948), *aff'd,* 275 A.D. 833, 89 N.Y.S.2d 895 (1949), *rev'd on other grounds* 300 N.Y. 417, 91 N.E.2d 868 (1950).

In *Van Winkle v. Blackford,* 33 W.Va. 573, 583, 11 S.E. 26, 29 (1890) this Court stated:

> The law is too well settled to make any reference to authority necessary, that, when a trustee does an act which purports to be a termination of his trust, it gives currency to the statute from the time of such an act. This act may be simply an act done in a public office, in which, by law, he must render an account of his trust. When the act purports to be a complete termination of the trust, he henceforth holds adversely, and at the end of the statutory period all further account is barred.

■ The present case does not involve the repudiation of a trust, but one in which the trust terminated by its own express terms. As mentioned previously, the trust terminated on May 17, 1980 and the appellee distributed the trust assets on August 25, 1980. Anytime until 1980 the appellant could have brought a suit against the appellee without any period of limitation controlling. In 1980, however, upon termination of the trust, the statute of limitations began to run. We conclude, therefore, that the statute of limitations is applicable, and it began to run in 1980.

■ Next, we must determine what statute of limitations is applicable after 1980.

The appellant maintains that, if any statute of limitations is applicable, it is the ten-year statute of limitations provided for in W.Va. Code, 55-2-7.[4] Again, we disagree. First, we find that W.Va.Code, 55-2-7 is not applicable to the facts of this case. A careful reading of W.Va.Code, 55-2-7 reveals that it applies in two situations. The first involves a suit against an executor, administrator, guardian, committee, sheriff, or personal representative regardless of whether a bond had been given. Clearly this situation is not involved here because the appellee was not an executor, administrator, guardian, committee, sheriff, or personal representative; rather, it was a trustee. The second situation involves a suit against any fiduciary, including a trustee, who has settled an account under the provisions of W.Va.Code, 44-4-1 *et seq.,* to hold the fiduciary liable for any balance stated in such account "to be in his hands." There is no evidence that the trustee here settled an account as provided for in W.Va.Code, 44-4-1 or that this action involves such a settlement. Further, the appellant has not alleged that any accounts belonging to the trust remain in the appellee's hands as trustee. Instead, the appellant asserts a claim to assets which the appellee distributed in 1980 and which vested in the trust beneficiaries almost twelve years before he filed a suit against the appellee. To summarize, we find that the ten-year period of limitation provided for in W.Va. Code, 55-2-7 does not apply when an action is not brought against an executor, adminis-

---

4. W.Va.Code, 55-2-7 [1994 Replacement Volume], provides:

The right of action upon the bond of an executor, administrator, guardian, curator or committee, or of a sheriff acting as such, shall be deemed to have first accrued as follows: Upon a bond of a guardian or curator of a ward, from the time of the ward's attaining the age of eighteen years, or from the termination of the guardian's or curator's office, whichever shall happen first; and upon the bond of any personal representative of a decedent or committee of an insane person, the right of action of a person obtaining execution against such representative or committee, or to whom payment or delivery of estate in the hands of such representative or committee shall be ordered by a court acting upon his account, shall be deemed to have first accrued from the return day of such execution, or from the time of the right to require payment or deliv-

ery upon such order, whichever shall happen first. And as to any suit against such fiduciary himself, or his representative, which could have been maintained if he had given no bond, there shall be no other limitation than would exist if the preceding section [§ 55-2-6] were not passed. Where any such fiduciary, or any other fiduciary, has settled an account under the provisions of article four [§ 44-4-1 et seq.], chapter forty-four of this Code, a suit to hold such fiduciary or his sureties liable for any balance stated in such account to be in his hands shall be brought within ten years after the account has been confirmed. The right to recover money paid under fraud or mistake shall be deemed to accrue, both at law and in equity, at the time such fraud or mistake is discovered, or by the exercise of due diligence ought to have been discovered.

trator, guardian, committee, sheriff, or personal representative, or when it is not brought against any fiduciary for an account stated to be in his hands. Therefore, W.Va. Code, 55–2–7 is not applicable here.

■ We note that the appellant claims there are circumstances in which the normal rules governing the running of the statute of limitations do not apply. These circumstances are encompassed in the discovery rule. Accordingly, the appellant maintains that the statute of limitations did not begin to run until May 1989 when the appellee first contacted him concerning the trust. "Generally, a cause of action accrues (i.e., the statute of limitations begins to run) when a tort occurs; under the 'discovery rule,' the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim." Syllabus Point 1, *Cart v. Marcum*, 188 W.Va. 241, 423 S.E.2d 644 (1992). In addition:

> The 'discovery rule' . . . is to be applied with great circumspection on a case-by-case basis only where there is a strong showing by the plaintiff that he was *prevented* from knowing of the claim at the time of the injury. The general rule is that mere ignorance of the existence of a cause of action or of the identity of the wrongdoer does not prevent the running of a statute of limitations. In order to benefit from the rule, a plaintiff must make a strong showing of fraudulent concealment, inability to comprehend the injury, or other extreme hardship . . .

188 W.Va. at 245, 423 S.E.2d at 648.

The facts in this case differ from those in *Timothy Gaither v. City Hospital, Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997), where we found that the discovery rule stated in *Cart* was not applicable. *Gaither* was a medical malpractice case where the plaintiff knew of the existence of his injury, but did not know the injury was the result of any party's conduct other than his own. There we found that the discovery rule articulated in *Cart* did not apply because the plaintiff had no reason to discover the cause of his injury earlier than he did. We noted in *Gaither*, however, that the discovery rule stated in *Cart* is applicable where a plaintiff knows or should reasonably know of the existence of an injury and its cause. This is the situation in the present case.

■ This Court believes that the appellant should reasonably have known of the existence of his claim long before May 1989, when he was notified by the appellee. The appellant knew of his father's death in 1970. At that time or any time thereafter, an inquiry into the nature of his father's estate would have disclosed the existence and the terms of the trust. The appellant would have immediately discovered that he was excluded as a beneficiary of the trust, and he could have asserted his claim in a timely manner. Because the appellant neglected to make such an inquiry, he cannot now benefit from the discovery rule. Further, the appellant does not make the strong showing required under *Cart*. The appellant submitted an affidavit stating that he did not know about the trust or his interest in it until notified by the appellee in May 1989. Nevertheless, he did not offer any evidence to explain his failure to take reasonable measures to ascertain his legal rights under his father's estate in the nineteen year period beginning in 1970 and ending in 1989. He has failed to show the required fraudulent concealment, inability to understand his injury, or other extreme hardship. Therefore, he is precluded from relying on the discovery doctrine to escape the statute of limitations.

■ Because Section 55–2–7 is not applicable to the appellant's action, we find that the general "catch-all" periods of limitation set forth in W.Va.Code, 55–2–12 necessarily govern.[5] Such limitation periods are generally applied to suits involving trusts, where

---

**5.** W.Va.Code, 55–2–12 [1994 Replacement Volume] provides:

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

no specific period of limitation applies.[6] The period of limitation provided for in Section 55-2-12 is either one year or two years depending on whether the action would survive the appellant's death. The appellant, therefore, would have had to file this action in either 1981 or 1982. Because the appellant did not commence this suit until 1992, his claims are obviously time-barred, regardless of whether the one- or two-year limitations period applies.

The appellant cannot escape the fact that he simply waited too long to bring his action. The appellant's father died in 1970, yet he did nothing at this time to determine the nature of his father's estate. For the next ten years when his siblings received income from the trust and he did not, he still did nothing to ascertain the existence or terms of the testamentary trust. In 1980, when the trust terminated and his siblings received the corpus of the trust, the appellant still did nothing. Finally, after being contacted by the Bank in 1989, the appellant waited almost another three years before filing his claim. We can find nothing in either law or equity that saves the appellant from his own dilatory behavior or protects him from the running of all possible limitation periods. We conclude that the statute of limitations came into effect in 1980 for the reasons previously set forth. The appellant has not established circumstances which would justify the tolling of the statute of limitations under the discovery rule. Therefore, we believe the appellant has failed to make a sufficient showing on an essential element of the case, which is that his action was timely filed.

The judgment of the Circuit Court of Kanawha County is, therefore, affirmed.

Affirmed.

**6.** See George G. Bogert, The Law of Trusts & Trustees § 950 at 616–618 (2nd ed. Revised 1982) [1995 Replacement Volume].

**1.** The relevant language in the will provides: "In the event that Leo Vorholt does not live until the termination of the Trust Estate, then his interest shall pass to his children and descendants, *per stirpes*, and not *per capita*."

**2.** In full, syllabus point two of *Hanes* states:
Any testamentary or inter vivos trust governed by the laws of the State of West Virginia, regardless of the date of its execution, includ-

WORKMAN, Chief Justice, concurring, in part, dissenting in part:

(Filed July 21, 1997)

Although I agree with the majority's conclusion that Appellant's action is barred by the statute of limitations contained within West Virginia Code 55-2-12 (1994), I disagree with the decision to the extent it concludes the statute of limitations began to run when the trust terminated in 1980. Instead, I believe the statute of limitations began to run in 1989, when Appellant first learned of the trust's existence. As to this point, it is beyond comprehension how, on one hand, the majority can state that Appellant "should have reasonably known of the existence of his claim long before May of 1989," while on the other hand, it places no significance to the fact that One Valley Bank failed to contact Appellant until 1989, despite the fact it *had actual knowledge* since 1970 that Appellant was the adopted son of Leo J. Vorholt.

Approximately three years prior to the expiration of the trust and twelve years before Appellant was contacted by One Valley Bank, this Court stated: "Any testamentary ... trust governed by the laws of the State of West Virginia, regardless of the date of its execution ... shall be construed under the provisions of *W. Va.Code*, 48-4-5 [1969] and adopted children shall take under any provisions which uses the word[ ] ... 'children'....'"[1] Syl. pt. 2, in part, *Wheeling Dollar Savings & Trust Co. v. Hanes*, 160 W.Va. 711, 237 S.E.2d 499 (1977).[2] Certainly, as an institution which professionally manages trust accounts, One Valley Bank actually knew or reasonably should have known of this Court's decision in *Hanes*. As

ing by way of example and not by way of limitation, all trusts executed before 1959, shall be construed under any provisions of *W.Va.Code*, 48-4-5 [1969] and adopted children shall take under any provisions which uses the words "child" or "children," or any general words which are loosely, if not technically, synonymous with the words "child" or "children," including again by way of example and not by way of limitation, such words as "natural children," "descendants," "heirs," "issue," or any other similar language.

One Valley Bank also knew of Appellant's status as an adopted child, I believe One Valley Bank clearly had a fiduciary duty as the trustee to at least inform Appellant of the trust and his potential qualification as a beneficiary.

To the contrary, I do not find any evidence which suggests Appellant should have known or reasonably should have known about the trust. The majority suggests Appellant should have made an inquiry into his father's estate because he knew his father was dead. However, Appellant was seventeen years old when his father died and never had any reason to question his father's estate until One Valley Bank contacted him in 1989. It is far from a "reasonable" expectation to think ordinary people spend their time searching dusty circuit court record rooms to find trust agreements they do not know exist. Therefore, I conclude under the discovery rule the statute of limitations should have begun to run in 1989, not 1980.

Lastly, I believe although I concur with the result based on the statute of limitations, I conclude that, with regard to their obligations to be cognizant of the law, the majority opinion leaves the strong implication that major banking institutions will be held to a lower standard than average people.

STARCHER, Justice, concurring, in part, and dissenting, in part:

(Filed May 8, 1998)

I concur in the result of this case. However, I would have reached the same result through the application of *Gaither v. City Hospital, Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997), which analyzed the discovery rule and its effect on statutes of limitation.

I must say that while I support the result of this case, I am concerned that the evidence might well support a jury finding that the appellee bank negligently distributed the 1955 Ansel Vorholt trust, thereby creating a question of fact that would survive summary judgment. One could find that the appellee bank's trust department failed to keep abreast of the law; I agree with Justice Workman, and hope that the Court's opinion is not read to excuse financial institutions from knowing the current state of the law. As a doctor should be knowledgeable of trends in his or her field of medicine, or an insurance company should understand new insurance statutes and regulations, a bank should be aware of changes in the law of estates and trust. Banks and trust departments deal with trust and estate law on a daily basis; bank customers do not.

Leo Vorholt died in 1970, and the appellee bank began paying the trust income created under Ansel Vorholt's 1955 will only to the appellant's stepbrother and stepsister, and none to the appellant, Leo Vorholt's adopted son. *W.Va. Code*, 48-4-5 was amended in 1959 to provide adopted children the same rights of inheritance as natural born children. The bank relied on our opinion in *Security National Bank & Trust v. Willim*, 151 W.Va. 429, 153 S.E.2d 114 (1967) where we stated that the statutes in effect at the time a will was written should be applied.

But in 1977, we overruled *Willim* and held that trusts executed before 1959 must be construed under *W.Va. Code*, 48-4-5 [1959]. *See Wheeling Dollar Savings & Trust Co. v. Hanes*, 160 W.Va. 711, 237 S.E.2d 499 (1977). After we issued the *Hanes* decision, the bank should have begun to pay the appellant his share of the trust income, but it did not. Then, in 1980, the Ansel Vorholt trust terminated and the bank transferred ownership of the estate property only to the trust beneficiaries, including the appellant's stepbrother and stepsister, again not recognizing the *Hanes* decision. The appellant did not receive the share to which he was legally entitled.

Contrary to the majority's opinion, *see supra* 201 W.Va. at 489, 498 S.E.2d at 246, I see absolutely nothing in the record to suggest that the appellant had any reason to know in 1970, 1977 or 1980 that the bank had breached any duty towards him. The record simply does not support the notion that the appellant should have "offer[ed] evidence to explain his failure to take reasonable measures to ascertain his legal rights under his *father's* estate in the nineteen year period beginning in 1970 and ending in 1989." 201 W.Va. at 489, 498 S.E.2d at 246 (emphasis added). This comment by the majority miss-

es the whole point: this case revolves around the bank's mishandling of the appellant's *grandfather's* estate, not his father's estate.

I can think of no reason why a 17-year-old living in Florida (like the appellant was when his father died in 1970) should have been concerned about how a bank in West Virginia was handling a trust account for a deceased, adoptive grandfather he never knew. The appellant's affidavit in the record indicates that he did not even know of the existence of his grandfather's trust until 1989 when he was contacted by the bank. Further, I find nothing in the record to suggest that the appellant knew his adopted siblings were receiving proceeds from his grandfather's trust account after the death of his father. Hence, he had absolutely no reason to try and make an inquiry about his legal rights.

My reading of the record shows that it was not until 1989 that the appellant was first advised of the results of a title search on the disputed property, and "discovered" that he might have a cause of action against the bank. The unfortunate problem is that the appellant's counsel waited two years and nine months to file this action.

The majority's application of the statutes of limitation and the discovery rule to these simple facts, to me, seems to be backwards. The majority begins by saying the limitation period started to run in 1980, then tries to figure out which statute of limitation applies, then says the plaintiff has failed to prove the cause of action was concealed from him by the defendants, and lastly that he is not entitled to the benefits of the discovery rule.

The evaluation of whether a case is barred by a statute of limitation is a four-step process. *See, Keesecker v. Bird*, 200 W.Va. 667, 682–684, 490 S.E.2d 754, 769–771 (1997). In the first step of the process, the court must determine what limitation period applies. I agree with the majority that the 10-year statute of limitation found in *W.Va. Code*, 55–2–7 [1972] does not apply. I accept, but do not fully agree with, the majority's conclusion that the one-year "catch-all" statute of limitation found in *W.Va. Code*, 55–2–12 [1959] is instead applicable.[1]

The second step in the process recognizes that a statute of limitation is an affirmative defense. The defendant or party relying on the limitation period bears the burden of proving entitlement to the defense. Hence, the defendant must prove (1) when the cause of action "accrued," that is, when all of the elements existed such that the plaintiff *could* have filed an action, and (2) that the plaintiff filed his claim outside the limitation period. Here, the appellee bank showed that its last potential negligent act was in 1980, when it distributed the trust assets in a manner contrary to law. Hence, the one-year statute of limitation was triggered in 1980.

The third step involves determining whether the discovery rule tolls the applicable statute of limitation. Normally a statute of limitation begins to run when the negligent act occurs. However, under the "discovery rule" the statute of limitation is tolled until a plaintiff knows or by reasonable diligence should know of his claim. In *Gaither v. City Hospital, Inc., supra*, the Court analyzed 77 years of case law interpreting the discovery rule, and stated the general guide for the discovery rule's application in this manner:

> [U]nder the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act

---

1. I cannot say that I am in any way comfortable with this conclusion. However, because the appellant failed to brief whether any other statute of limitation could apply, the Court declined to go any further in its research. Practitioners and judges facing a similar situation should investigate the possibility of applying the contract statute of limitation, *W.Va. Code*, 55–2–6 [1923], and consider whether or not an individual such as the appellant could be considered a third-party beneficiary to the contract between the bank and the settlor. Questions should also be asked whether a statute of limitation even applies when the remedy sought is specific performance, rather than damages. Most of all, I am unclear whether a breach of fiduciary duty sounds in equity, whether it is a tort (with a two-year statute of limitation under *W.Va. Code*, 55–2–12 [1959]), or whether it is a breach of contract (with a ten-year statute of limitation under *W.Va. Code*, 55–2–6 [1923]). Whatever argument is advanced, it should be advanced at the circuit court level first.

with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

Syllabus Point 4, in part. This rule is the culmination of seven decades of application of the discovery rule to cases involving defective products, negligent lawyers and doctors, trespassing miners, and privacy-invading public officials. *Gaither* is not a factual aberration applicable only to medical malpractice claims as the majority opinion might suggest.

In this case, the appellant claims he is entitled to the benefit of the discovery rule. However, in applying *Gaither* to the facts, it is still clear that the appellant's cause of action against the bank is time barred. Even though the appellant's cause of action accrued in 1980, he was apparently unaware of the action's existence until 1989; hence, under the discovery rule as announced in *Gaither*, the statute of limitation was tolled until 1989. After 1989, the appellant was not entitled to the discovery rule's protection, and the one-year statute of limitation was triggered.

The fourth and last step in the analysis is whether, once the plaintiff knows or should know he has a lawsuit, the defendants did anything to conceal their actions from the plaintiff or otherwise deter him from acting. This is essentially a "last chance" defense by a plaintiff to a statute of limitation. As we stated in *Gaither*, "often an injury or wrong occurs of such a character that a plaintiff cannot reasonably claim ignorance of the existence of a cause of action." 199 W.Va. at 712, 487 S.E.2d at 907. In those cases, the burden shifts to the plaintiff to make a strong showing "that some action by the defendant prevented the plaintiff from knowing of the wrong at the time of the injury." 199 W.Va. at 712, 487 S.E.2d at 907, *quoting* Syllabus Point 3, *Cart v. Marcum*, 188 W.Va. 241, 423 S.E.2d 644 (1992). As *Gaither* makes clear, this rule from *Cart* is not the starting point, but is the last line of defense for a plaintiff; it only applies in those instances where "causal relationships are so well established that we cannot excuse a plaintiff who pleads ignorance." *Id.*

I see nothing in the record of the instant case which suggests any concealment by the appellee bank, nor any action designed to deter the appellant from prosecuting his lawsuit. The appellant knew in 1989 that he had a loss caused by the bank, and he failed to show the bank did anything to prevent him from filing an action. Hence, I do not feel that the concealment defense espoused in *Cart* applies.

The plain conclusion is that the appellant knew in 1989 that the bank distributed the trust assets to his siblings and other beneficiaries and excluded him entirely. He should have filed a lawsuit by 1990, and not waited until 1992. Under the one-year statute of limitation, his claim would obviously be barred.

Accordingly, I concur with the majority's result; I dissent to the means used to reach that result.